# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| MCKENZIE LAW FIRM, P.A., and OLIVER LAW OFFICES, INC., on behalf of themselves and all others similarly situated,<br><br>      Plaintiffs,<br><br> v.<br><br>RUBY RECEPTIONISTS, INC.,<br><br>      Defendant. | Case No. 3:18-cv-01921-SI<br><br>**OPINION AND ORDER** |

Keith S. Dubanevich and Cody Berne, STOLL STOLL BERNE LOKTING & SCHLACHTER PC, 209 S.W. Oak Street, Suite 500, Portland, OR 97204; Laurence D. King, Matthew B. George, and Mario M. Choi, KAPLAN FOX & KILSHEIMER LLP, 350 Sansome Street, Suite 400, San Francisco, CA 94104; Robert I Lax, Lax LLP, 380 Lexington Avenue, 31st Floor, New York, NY 10168; Jon M. Herskowitz, BARON & HERSKOWITZ, 9100 S. Dadeland Blvd, #1704, Miami FL; Gregory J. Brod, BROD LAW FIRM, PC, 96 Jessie Street, San Francisco, CA 94105. Of Attorneys for Plaintiffs.

Andrew R. Escobar and Austin Rainwater, DLA PIPER LLP, 701 Fifth Avenue, Suite 6900, Seattle, WA 98104. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Plaintiffs, McKenzie Law Firm, PA ("McKenzie") and Oliver Law Offices, Inc.

("Oliver"), are two relatively small law firms. They bring this putative class action lawsuit

against Ruby Receptionists, Inc. ("Ruby"), a company that provides virtual receptionist services

to small businesses, including law firms. Plaintiffs are former clients of Ruby. They assert claims of breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, and money had and received—accounting. Plaintiffs move for partial summary judgment as to liability on their claim of breach of contract. For the reasons that follow, Plaintiffs' motion is denied.

## STANDARDS

A party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor. *Clicks Billiards Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001). Although "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment," the "mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and quotation marks omitted).

## BACKGROUND

Ruby Receptionists is a business based in Portland, Oregon that provides receptionist services to small businesses throughout North America. The putative class consists of all of Ruby's clients in the United States for telephone call answering and messaging services. Many of Ruby's clients are small law firms and solo practitioners. Ruby's clients enter into contracts

with Ruby to purchase receptionist services and are billed based on the quantity of "receptionist minutes" used or contracted for per month. Plaintiffs' claims all stem from two of Ruby's practices. Plaintiffs allege that Ruby failed to disclose to its clients Ruby's practice of "rounding up" to the nearest 30-second increment when calculating a "receptionist minute" and that Ruby also failed to disclose to its clients that Ruby includes in its charges the time that callers have been placed on hold by Ruby's receptionists.

Ruby's clients enter into contracts with Ruby for a set number of "receptionist minutes" per month for a fixed monthly fee and an agreed-upon fee "per receptionist minute" for any additional minutes beyond the set number. In one version of the Ruby Receptionists Service Agreement, a section titled "Fees" offers three alternative plans for clients:

> Plan A: $229 per month, 100 receptionist minutes, Overage rate: 2.29 per receptionist minute, one voicemail box
>
> Plan B: $379 per month, 200 receptionist minutes, Overage rate: 1.90 per receptionist minute, two voicemail boxes
>
> Plan C: $769 per month, 500 receptionist minutes, Overage rate: 1.54 per receptionist minute, three voicemail boxes.

ECF 34, Ex. A.

Plaintiff Oliver contracted with Ruby from October 2012 until May 2013. Oliver purchased 100 receptionist minutes per month for $229 and agreed to pay $2.29 for each additional receptionist minute. Plaintiff McKenzie became a Ruby client in April 2016 and purchased a plan for 200 receptionist minutes per month for $413.08 and agreed to pay $2.07 for each additional receptionist minute. McKenzie cancelled Ruby's services in November 2018.

When calculating billing, Ruby rounds up telephone calls to the nearest 30-second increment. A telephone call that lasts ten seconds, for example, would be billed as thirty seconds (or one-half of a receptionist minute). A telephone call that lasts one minute and thirty-one

seconds would be billed as two minutes, as would a telephone call that lasts one minute and fifty-nine seconds. The time billed also includes any hold time incurred after a receptionist first answers the call until the call is transferred. Ruby charges for the entire duration of the telephone call from the time the call is first answered until the call is connected to the client, transferred to voicemail, the receptionist finishes taking a message or answering a question and the call disconnects, or the call otherwise disconnects.

Ruby's Terms and Conditions does not define the term "receptionist minute" or otherwise explain how it calculates its billing. The Terms and Conditions includes an integration clause, which states: "These Terms and Conditions and the Ruby Receptionist Service Agreement set forth the entire Agreement between the parties. This Agreement shall be binding upon all successors and assigns of the parties hereto." ECF 34 Ex. A. The Terms and Conditions and the Service Agreement together comprise the contract between the parties. The contract has a 30-day term and automatically renews unless one party gives written notice 30 days in advance. Ruby's clients can access and view their billing records and call history on Ruby's website and app.

## DISCUSSION

Plaintiffs move for summary judgment only on the issue of liability on their claim of breach of contract. They argue that the standard form integration agreements, here, the Service Agreement and the Terms and Conditions, are plain and unambiguous about Ruby's obligation to provide a fixed amount of monthly receptionist time at a fixed price. They also argue that there is no genuine dispute of fact that Ruby's practices involve rounding up to the nearest 30-second increment when billing. This practice, Plaintiffs argue, breaches the contract and shortchanges Plaintiffs for the amount of receptionist time for which they contracted. So too, Plaintiffs argue, does Defendant's practice of billing for time that a receptionist has placed a call on hold. Defendant responds that the contract is ambiguous about how "receptionist minutes" are

calculated and billed, and points to extrinsic evidence and prevailing industry standards as evidence that its method of calculating minutes and billing clients is not a breach of the contract terms.

In a diversity case, although federal law governs the procedures followed, including the summary judgment standard, state law provides the relevant substantive law. *Gasperini v. Ctr. for the Humanities*, 518 U.S. 415, 427 (1996). The Terms and Conditions of the contract provides: "The laws and jurisdiction of the state of Oregon shall govern any and all matters of dispute between Ruby and Client." Accordingly, the Court looks to Oregon law for guidance in interpreting the relevant contract provisions.

**A. Contract Interpretation Under Oregon Law**

Under Oregon law, the primary objective for any Court interpreting a contract is to give effect to the parties' agreed-upon intentions. *See, e.g.*, *Connall v. Felton*, 225 Or. App. 266, 272 (2009). Oregon courts have established a three-step process for interpreting contracts. *Yogman v. Parrott*, 325 Or. 358, 361 (1997); *Ross Dress For Less, Inc. v. Makarios-Oregon, LLC*, 210 F. Supp. 3d 1259, 1263 (D. Or. 2016). First, a court must determine whether the relevant contract provision is ambiguous. *See Apeldyn Corp. v. Eidos, LLC*, 943 F. Supp. 2d 1145, 1149 (D. Or. 2013) (citing *McKay's Mkt. of Coos Bay, Inc. v. Pickett*, 212 Or. App. 7, 12 (2007)). "In considering whether a contractual provision is ambiguous, a court is limited to considering only the plain meaning of the words used by the parties in their contract and any extrinsic evidence showing the circumstances under which the contract was made." *Id.* (citing *Batzer Constr., Inc. v. Boyer*, 204 Or. App. 309, 314 (2006)). If the wording of a contractual provision can, "in context, reasonably be given more than one plausible interpretation," it is ambiguous as a matter of law. *Williams v. RJ Reynolds Tobacco Co.*, 351 Or. 368, 379 (2011). A court must also strive to, "if possible, construe the contract so as to give effect to all of its provisions." *Id.* If the

provision is unambiguous and its meaning is clear, the analysis ends, and a court then applies the contractual term to the facts of the case. *Ross Dress For Less*, 210 F. Supp. 3d at 1263.

When a contractual provision is ambiguous, however, the court proceeds to the second step in the *Yogman* analysis. At the second step, the trier of fact must look beyond the four corners of the agreement to determine the parties' mutual intention, if a mutual and common intention in fact existed. *Id.* "At the second step, the trier of fact examines extrinsic evidence of the contracting parties' intent and construes the disputed contractual provision consistent with that intent, if such a resolution can be determined." *Id.* Oregon follows the objective theory of contracts and thus relevant evidence at step two may include manifestations of intent, including any expressions of any common understanding communicated by the parties. *Id.* Absent direct evidence of the parties' intent, a court may look to the parties' course of dealing or their performance during the term of the contract as relevant circumstantial or inferential evidence of their common understanding, if any, of the ambiguous provision. *See Apeldyn*, 943 F. Supp. 2d at 1149; *Yogman*, 325 Or. at 363-64.

Absent evidence, either direct or circumstantial, to aid the trier of fact in determining the parties' intent, or if the contract remains ambiguous even after considering that evidence, the third step is to apply any relevant maxims of construction. *Id.* at 364. When a contractual provision is ambiguous, determining its meaning at steps two and three of the *Yogman* analysis is generally a question of fact not appropriate for resolution at summary judgment. *Dial Temp. Help Serv., Inc. v. DLJ Int'l Seeds, Inc.*, 255 Or. App. 609, 611 (2013) (the "general rule" is that the meaning of a contract may be disposed of through summary judgment only if the provision in question is unambiguous); *PGF Care Ctr., Inc. v. Wolfe*, 208 Or. App. 145, 151 (2006) ("Disputes over the meaning of a contract provision may not be disposed of by summary

judgment if the provision is ambiguous."). Oregon courts have emphasized that it is not the ambiguity of a contract *per se* that makes summary judgment inappropriate, but that the ambiguity represents a dispute over a genuine issue of material fact. *Dial*, 255 Or. App. at 611.

## B. The Service Agreement

Based on the text of the Service Agreement and the Terms and Conditions, the Court finds that the contract is ambiguous. The parties agree that "receptionist minute" is a "term of art," but nowhere is that term explicitly defined in the contract. Although the parties contracted for a certain number of "receptionist minutes" every month, most telephone calls do not last an exact number of minutes, and the contract is silent on what happens when a telephone call lasts, for example, for ten seconds, thirty seconds, or one minute and fifteen seconds. Similarly, the per-minute fee for additional "receptionist minutes" does not specify how that additional time is calculated or billed when a call lasts more or less than exactly 60.00 seconds.

Plaintiffs contend that by only rounding up, and never rounding down, Ruby has breached the contract and artificially inflated the time a receptionist spends on each call and this practice makes it impossible for customers to receive the exact number of receptionist minutes each month for which they contracted and paid. Plaintiffs also argue that only rounding *up* necessarily means that Ruby overcharges customers for minutes beyond the monthly package of receptionist minutes because a "receptionist minute" for Ruby's billing purposes can last fewer than 60 seconds. As stated previously, the contract is silent on Ruby's rounding practices, and nothing in the contract expressly prohibits or authorizes rounding up in 30-second increments.

Ruby is not the only company to use a variation of a "per minute" billing provision in a telephone-related contract. The Supreme Court of Alabama declined to find that a cellular service agreement that charged for telephone calls "per minute" unambiguously prohibited rounding up to the next full minute. *Mann v. GTE Mobilnet of Birmingham, Inc.*, 730 So. 2d 150,

153 (Ala. 1999). To conclude that the "per minute" provision in GTE's contract unambiguously prohibited rounding up, the Alabama Supreme Court noted that it "would have to hold, as a matter of law, that the agreement's references to 'per minute' actually mean 'per second,' 'per six seconds,' or per some other increment." *Id.* (emphasis omitted). Additionally, the court noted that "the monthly bills each class member receives from GTEM [that] reflect charges based on full-minute increments" may have put customers on notice that their calls were being billed on a per-minute basis. *Id.*

The Georgia Court of Appeals, when faced with a contract similar to Ruby's, which charged a fixed amount "per minute" for telephone calls but was silent on how partial minutes would be billed, also found that contract to be ambiguous. *Sharple v. AirTouch Cellular of Ga.*, 250 Ga. App. 216, 218 (2001). The *Sharple* court accepted that in some situations when a customer is quoted a price per certain unit of measure, the unit of measure does not mean that the seller sells only in whole-unit increments. *Id.* at 219. For example, the court observed that when grocery store produce is sold per pound, a customer purchasing a fraction of a pound will only have to pay the fractional amount of the price per pound. *Id.* On the other, hand, however, nothing in the contract suggested that there would be no rounding or that time would only be rounded up and never down. *Id.* The court noted that if the contract required that time be rounded both up and down, it could produce the anomalous result that some telephone calls lasting less than 30 seconds would be free of charge. *Id.* The court thus found the contract ambiguous.

In a similar lawsuit challenging a telephone company's practice of rounding up to the nearest minute, the New Jersey Supreme Court held that

> no reasonable consumer would have been deceived into believing
> that he or she was being billed by the second when the minimum
> charge on his or her monthly statements for residential telephone
> service was a charge for a full minute. Common sense should have

> informed plaintiff that the charge for calls lasting less than one minute had been rounded up. Thus, even though defendant's description of its rates to prospective customers could have been clearer, any customer would have had to know that he or she was having each call rounded up to a full minute charge once the first bill arrived.

*Weinberg v. Sprint Corp.*, 173 N.J. 233, 244-45 (2002).

The District of Columbia Circuit reached a similar conclusion in a case challenging the practice of a long-distance telephone company of rounding up to the nearest full minute, noting, "[b]ecause no reasonable customer could actually believe that each and every phone call she made terminated at the end of a full minute, the customer must be aware that [defendant] charges in full-minute increments only." *Alicke v. MCI Commc'ns Corp.*, 111 F.3d 909, 912 (D.C. Cir. 1997).

The reasoning in these cases, when finding a contractual provision of a "per minute" billing practice to be ambiguous, is persuasive here. Although Ruby's contract describes its services in dollars per "receptionist minute," the term of art "receptionist minute" is not explicitly defined in the contract. This supports a finding that the contract is ambiguous. In addition, the parties offer multiple plausible interpretations of the contract's billing provisions, which further supports the conclusion that the contractual term "receptionist minute" is ambiguous.

Plaintiffs argue that Ruby should have simply charged for the "actual time" a receptionist is involved in a call. In doing so, Plaintiffs appear to argue that Ruby should have counted to at least the hundredth of a second level of measurement. *See* ECF 33 at 9 n.2 (measuring hypothetical calls down to the hundredth of a second). But the contract speaks only in broad terms of "receptionist minutes" and there is no unambiguous reading of the contract that would make clear exactly to what level of specificity Ruby must bill. For example, it is unclear whether

Plaintiffs would still argue that Ruby had breached the contract if Ruby rounded up to the nearest second, nearest tenth of a second, or nearest millisecond. Because the contract does not specify a level of exactitude, rounding up to the nearest 30-second interval is no more expressly prohibited by the contract than rounding up to the nearest tenth or hundredth of a second. Further, Ruby's customers likely would have noticed that *every* call on their monthly bill ended in a unit of exactly 30 seconds and thus could not reasonably have believed that they were being billed only for the "actual time" that each call lasted. Even if Ruby's clients would have noticed that every call was being billed in 30-second increments, however, the clients would not have been able to determine from any given billing entry whether call duration was being regularly rounded up, rounded down, or rounded to the nearest 30-second increment.

Plaintiffs also argue that the contract implicitly required Ruby to round to the *nearest* 30-second interval, whether up or down. This formula for rounding similarly is not found anywhere in the express terms of the contract. As the Georgia Court of Appeals discussed in *Sharple*, that formula could lead to the anomalous result that any calls lasting less than fifteen seconds (under Plaintiffs' suggested rounding formula for Ruby) would be free of charge. Particularly when read in light of the context of a contract that charges fees for services rendered, the contract does not unambiguously require that any calls lasting under fifteen seconds be free.

Many industries, including the virtual receptionist industry and the telephone industry, round up when billing units of time. *See* ECF 55 at 8-9 (noting that Ruby's competitors Abby Connect and Answer 1 bill in rounded-up 30-second increments and telephone networks Verizon, AT&T and Sprint bill in rounded-up one-minute increments). Defendants also note that the two named Plaintiffs (the putative Class Representatives) are both law firms, and the legal industry also generally rounds *up* to the nearest billed interval of time, in six-minute or ten-

minute intervals, when billing clients by hourly rates. Like an attorney's billable hourly rate, the per "receptionist minute" provision could reasonably be understood to incorporate a billing practice of rounding up to a certain increment of time.

The contract is similarly ambiguous as to the charges for "hold time." The contract is silent on whether time that a caller spends on hold before a receptionist transfers or terminates the call is encompassed within the definition of a "receptionist minute." Plaintiffs point to Ruby's website, which contains a "frequently asked questions" section explaining that Ruby "only charge[s] for the time that the receptionist is involved in the call; there are no charges per transfer, per message, or for the time that you talk to your caller." ECF 34 Ex. B (FAQ page from Ruby's website). Defendants respond by identifying a different section of the frequently asked questions that informs clients that, after a receptionist answers a call, the receptionist places the call on hold while the receptionist asks the client if they wish to accept the call. ECF 56-1 at 8. Neither of these frequently asked questions sections resolves the ambiguity as to whether clients are billed for time that a caller spends on hold while a receptionist contacts the client to ask if the client wants to accept the call. Although the section of the frequently asked questions quoted by Plaintiffs states that clients are only charged for time that a receptionist is "involved in the call," it is ambiguous whether a receptionist is "involved in the call" during this time period.

After a court has found a material ambiguity in the contract at step one of the *Yogman* analysis, determining the contract's meaning at steps two and three is generally reserved for the trier of fact. There is a possible exception to this general rule when there is no relevant extrinsic evidence available to help resolve the ambiguity. *See Apeldyn Corp.*, 943 F. Supp. 2d at 1156; *see also Dial*, 255 Or. App. at 611-12. This exception does not appear to apply in this case. Ruby

has submitted deposition testimony from the named Plaintiffs, evidence from Ruby's website, communications between Plaintiffs and Ruby's representatives, and other purportedly extrinsic evidence about the course of dealing and common trade practices of companies involved in the telephone and receptionist industry. This and other purportedly extrinsic evidence could be used at step two of the *Yogman* analysis to attempt to discern the parties' common understanding of the contract, if any. The Court, however, reserves for another day and after the benefit of additional briefing, the determination of precisely what purported extrinsic evidence offered by the parties will be admissible at trial when step two of *Yogman* is presented to the trier of fact.

Because the contract is ambiguous on how to calculate both "hold time" and partial minute increments, its final interpretation is not appropriate for summary judgment. Genuine issues of fact remain about the parties' intent and mutual understanding, if any. Thus, the analyses under steps two and three of *Yogman* should be conducted by the trier of fact at trial.

## CONCLUSION

Plaintiffs' Motion for Partial Summary Judgment (ECF 33) is denied.

**IT IS SO ORDERED**.

DATED this 29th day of July, 2019.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge
