# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **McKENZIE LAW FIRM, P.A.**, and **OLIVER LAW OFFICES, INC.**, on behalf of themselves and all others similarly situated,<br><br>     Plaintiffs,<br><br> v.<br><br>**RUBY RECEPTIONISTS, INC.,**<br><br>     Defendant. | Case No. 3:18-cv-1921-SI<br><br>**OPINION AND ORDER** |

Keith S. Dubanevich and Cody Berne, Stoll Berne, PC, 209 S.W. Oak Street, Suite 500, Portland, OR 97204; Laurence D. King, Matthew B. George, and Mario M. Choi, Kaplan Fox & Kilsheimer LLP, 350 Sansome Street, Suite 400, San Francisco, CA 94104; Robert I Lax, Lax LLP, 380 Lexington Avenue, 31st Floor, New York, NY 10168; Jon M. Herskowitz, Baron & Herskowitz, 9100 S. Dadeland Blvd, #1704, Miami FL; Gregory J. Brod, Brod Law Firm, PC, 96 Jessie Street, San Francisco, CA 94105. Of Attorneys for Plaintiffs.

Andrew R. Escobar and Austin Rainwater, DLA Piper LLP, 701 Fifth Avenue, Suite 6900, Seattle, WA 98104. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

     Plaintiffs McKenzie Law Firm, P.A. ("McKenzie") and Oliver Law Offices, Inc.

("Oliver") (collectively, "Plaintiffs") are two former clients of Defendant Ruby Receptionists,

Inc., ("Ruby"). Ruby is a business that provides virtual receptionist services to its clients.

Plaintiffs bring this putative class action against Ruby based on Ruby's allegedly misleading

PAGE 1 – OPINION AND ORDER

billing practices. Plaintiffs assert claims for breach of contract, unjust enrichment, breach of the duty of good faith and fair dealing, and money had and received. Before the Court is Plaintiffs' motion to certify a class under Rule 23 of the Federal Rules of Civil Procedure (ECF 107) and Ruby's motion to preclude class certification (ECF 66). These motions involve the same issues, and the Court will address them together. The disposition of these motions largely turns on the type of extrinsic evidence that will resolve the ambiguous term "receptionist minutes" in Ruby's billing contract. For the reasons discussed below, Plaintiffs' motion to certify is granted and Defendant's motion to preclude certification is denied.

## STANDARDS

Federal class actions are governed by Rule 23 of the Federal Rules of Civil Procedure. The representative plaintiff "must be prepared to prove" that each of the applicable requirements of the rule is satisfied. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Rule 23 sets forth more than a "mere pleading standard." *Id.* District courts, however, have greater discretion to certify a class than to deny certification. *See Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 956 (9th Cir. 2013). A party seeking class certification must satisfy each of the requirements of Rule 23(a) and at least one requirement of Rule 23(b). *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 542 (9th Cir. 2013). Under Rule 23(a), a district court may certify a class only if:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law and fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). In other words, a proposed class must meet the requirements of numerosity, commonality, typicality, and adequacy of representation. *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 588 (9th Cir. 2012).

In addition to the requirements of Rule 23(a), a party seeking to maintain a class action also must "satisfy through evidentiary proof at least one of the provisions of Rule 23(b)." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). Plaintiffs here seek to certify the proposed class under Rule 23(b)(3). Under this rule, a class action may proceed if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

The class certification analysis under Rule 23 is "rigorous" and may "entail some overlap with the merits of the plaintiff's underlying claim." *Wal-Mart*, 564 U.S. at 351 (quotation marks omitted); *Comcast*, 569 U.S. at 33-34. Nevertheless, Rule 23 "grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 466 (2013). "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.* A district court, however, "*must* consider the merits if they overlap with the Rule 23(a) requirements." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011) (emphasis in original).

## BACKGROUND

### A.  Services Provided by Ruby and Plaintiffs' Allegations

Ruby is a business based in Portland, Oregon that provides receptionist services to small businesses throughout North America. The putative class in this federal action consists of Ruby's clients in the United States for telephone call answering and messaging services. Many of Ruby's clients are small law firms or solo practitioners. Ruby's clients enter into written contracts with Ruby to purchase receptionist services. Ruby bills its clients based on the quantity of "receptionist minutes" used or contracted for per month. The claims of Named plaintiffs McKenzie and Oliver

stem from two of Ruby's billing practices. First, Plaintiffs allege that Ruby failed to disclose to its clients Ruby's practice of always "rounding up" to the next 30-second increment when calculating a "receptionist minute." Second, Plaintiffs allege that Ruby failed to disclose to its clients that Ruby includes in its charges the time that callers have been placed "on hold" or "parked" by Ruby's receptionists.

Ruby's clients enter into written contracts with Ruby for a set number of "receptionist minutes" per month for a fixed monthly fee. There also is an agreed-upon fee "per receptionist minute" for any additional minutes used beyond the set monthly number. Oliver contracted with Ruby from October 2012 through May 2013. Oliver agreed to purchase 100 receptionist minutes per month for $229 and further agreed to pay $2.29 for each additional receptionist minute used after 100 minutes per month. McKenzie contracted with Ruby from April 2016 through November 2018. McKenzie agreed to purchase 200 receptionist minutes per month for $413.08 and further agreed to pay $2.07 for each additional receptionist minute used after 200 minutes per month.

As alleged by Plaintiffs, when calculating billing Ruby always rounds up the duration of a telephone call handled by Ruby to the next 30-second increment. Thus, a telephone call that lasts ten seconds, for example, is billed for thirty seconds (or one-half of a receptionist minute). A telephone call that lasts one minute and thirty-one seconds is billed for two minutes, as would a telephone call that lasts one minute and fifty-nine seconds. Further, according to Plaintiffs, the time billed also includes any "hold" or "parked" time incurred after a Ruby receptionist first answers the call until the call is transferred. Ruby charges for the entire duration of the telephone call, including "hold" or "parked" time, from the moment the call is first answered by a Ruby receptionist until the earlier of when: (a) the call is connected to the client; (b) the call is transferred to voicemail; (c) the receptionist finishes taking a message or answering a question and the call terminates or disconnects; or (d) the call otherwise terminates or disconnects.

Plaintiffs argue that Ruby breached its contracts with customers by: (1) always rounding up to the nearest 30-second increment when billing; and (2) charging customers for "hold" or "parked" time, because Ruby failed to disclose these billing practices to customers and prospective customers. Ruby's billing practices allegedly inflate the time charged against the balance of customers' receptionist minutes, causing customers to use their minutes more quickly and effectively receive fewer receptionist minutes than they had bargained for and paid. Plaintiffs also assert claims of unjust enrichment, breach of the duty of good faith and fair dealing, and money had and received based on these two billing practices.

## B.  Meaning of "Receptionist Minute"

Ruby's written contracts do not define the term "receptionist minute" or otherwise explain how Ruby calculates time for billing purposes. Ruby has a document entitled "Terms and Conditions," which includes an integration clause. The integration clause states: "These Terms and Conditions and the Ruby Receptionist Service Agreement set forth the entire Agreement between the parties. This Agreement shall be binding upon all successors and assigns of the parties hereto." The Terms and Conditions document and the separate document titled "Service Agreement," thus, together comprise the written contract between Ruby and its client. The contract has a 30-day term and automatically renews unless one party gives written notice 30 days in advance. Ruby's clients can access and view their billing records and call history on Ruby's website and app at any time.

Ruby's training materials and internal communications are relevant to the meaning of "receptionist minute" and whether Ruby's adequately disclosed its billing practices. From 2012 to 2018, Ruby had a Frequently Asked Questions ("FAQ") section on its website with information allegedly relevant to the meaning of the term "receptionist minute." The FAQ stated: "We only charge for the time that the receptionist is involved in the call; there are no charges per

transfer, per message, or for the time that you talk to your caller." Ruby's written training materials advised similarly: "We only ever bill for the amount of time a receptionist is live on the call." One guide for Ruby's sales personnel who sign up new customers said nothing at all about rounding up or billing for hold or parked time but repeated that a "receptionist minute" is "the time that a receptionist is involved in the call." Some Ruby sales representatives also used sales scripts, which Plaintiffs allege did not accurately disclose that Ruby rounded up to the next 30-second increment or charged customers for time spent on hold.

There is some extrinsic evidence from individual customers and sales representatives showing that Ruby did inform at least some customers of Ruby's billing practices that are challenged in this lawsuit. Ruby submitted declaration from two putative class members stating that, during their initial sales calls with Ruby, they asked about the specifics of Ruby's billing practices and the Ruby sales representative told them that Ruby billed by rounding up to the next 30-second increment. ECF 69, 76. Ruby also produced emails sent by Ruby's sales director to twelve other customers, informing those customers: "We bill on 30 second increments so if you have a call that lasts 20 seconds we would bill you for half a minute, and if you had a call that lasted 40 seconds, we would bill you for a full minute." ECF 118. Ruby also offered new customers with a free trial period during which they could cancel with no penalty and receive a full refund. Customers could access Ruby's online billing website and app, at all times, including during this free trial period. Both platforms listed receptionist time only in 30-second increments and included separate totals for call length and billed receptionist minutes.

## C.  Procedural History

Plaintiffs brought this action in November 2018. Shortly thereafter, Ruby moved to dismiss on abstention grounds because of a pending parallel state court putative class action lawsuit, involving different named plaintiffs but the same plaintiffs' counsel. The Court denied

that motion. ECF 49. Plaintiffs then moved for partial summary judgment as to liability on their breach of contract claim. The Court denied Plaintiff's motion for partial summary judgment. ECF 59. The Court explained that because the term "receptionist minute" as used in Ruby's standard form integrated agreement was ambiguous, both with regard to the treatment of partial minute increments and to the treatment of "hold" time, partial summary judgment is inappropriate. *Id*.

## DISCUSSION

Plaintiffs request certification of a class defined as:

> All persons or entities in the United States who obtained receptionist services from Defendant Ruby Receptionists between November 2, 2012 and May 31, 2018, pursuant to its form Service Agreements.

ECF 107 at 10. The Court considers whether class certification is appropriate under the factors set forth in Rule 23.

Before certifying a class, the Court must assure itself that the proposed class action satisfies four prerequisites: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). In addition to meeting the numerosity, commonality, typicality, and adequacy prerequisites, the class action must fall within one of the three types specified in Rule 23(b). To conclude that the requirements of Rule 23(b)(3) have been satisfied, the Court must find that questions of law or fact common to class members "predominate over any questions affecting only individual members" ("predominance") and that the class action must be "superior to other available methods for fairly and efficiently adjudicating the controversy" ("superiority"). Fed. R.

Civ. P. 23(b)(3). Further, "[t]he district court's Rule 23(a) and (b) analysis must be 'rigorous.'"

*In re Hyundai*, 926 F.3d at 556 (quoting *Comcast Corp. v. Behrend*, 569 U.S. 27, 33(2013)).

## A.  Rule 23(a) Requirements

### 1.  Numerosity

In the District of Oregon, as in many other districts, there is a "rough rule of thumb" that

40 class members is sufficient to meet the numerosity requirement. *Giles v. St. Charles Health*

*Sys., Inc.*, 294 F.R.D. 585, 590 (D. Or. 2013); *see also Wilcox Dev. Co. v. First Interstate Bank*

*of Or., N.A.*, 97 F.R.D. 440, 443 (D. Or. 1983) (same); 1 *McLaughlin on Class Actions* § 4:5

(15th ed.) ("The rule of thumb adopted by most courts is that proposed classes in excess of 40

generally satisfy the numerosity requirement."). Plaintiffs allege that the class consists of 18,000

members. Ruby does not dispute this allegation. Accordingly, the Court finds that Plaintiffs have

satisfied the numerosity requirement.

### 2.  Commonality

To satisfy the commonality requirement, Plaintiffs must show that the class members

suffered the "same injury"—that their claims depend upon a "common contention." *Wal-Mart*

*Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (quotation marks omitted). "That common

contention, moreover, must be of such a nature that it is capable of classwide resolution—which

means that determination of its truth or falsity will resolve an issue that is central to the validity

of each one of the claims in one stroke." *Id.* Class members, however, need not have *every* issue

in common: commonality requires only "a single significant question of law or fact" in common.

*Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589 (9th Cir. 2012); *see also Wal-Mart*, 564 U.S.

at 359. Disputes over form contracts typically satisfy the commonality requirement. *See In re:*

*Premera Blue Cross Customer Data Security Breach Litigation*, Case No. 3:15-md-2633-SI,

2019 WL 3410382, at *18 (D. Or. July 29, 2019) (collecting cases).

The alleged harm shared by the putative class members is that Ruby breached the standard form contracts it had with them by miscalculating the duration of their calls, resulting in overbilling. As a result, putative class members allegedly did not receive the full value of the services for which they had contracted and paid. Plaintiffs allege that Ruby breached the standard form contracts in two ways: (1) rounding up the number of seconds to the next 30-second interval and (2) charging for the time a caller is on hold before a receptionist answers or otherwise handles the call. Plaintiffs allege that Ruby did not disclose these billing practices, and instead mislead customers to believe that they would be charged only for the time that a receptionist was handling a call.

Plaintiffs list several common significant questions of law or fact, including whether Ruby's call time calculation method breached its contracts, whether these breaches caused damages to class members, and whether Ruby's conduct can support claims of unjust enrichment, good faith and fair dealing, and money had and received. *See* ECF 107 at 24. Ruby argues that common questions are irrelevant if the questions are not susceptible to common resolution. *See* ECF 116 at 15. The Court agrees with Ruby in principle but finds that the common questions here will also have common answers, one way or the other. Accordingly, the Court finds that Plaintiffs have satisfied the commonality requirement.

### 3. Typicality

In order to meet the typicality requirement, Plaintiffs must show that the named parties' claims or defenses are typical of the claims or defenses of the class. Fed. R. Civ. P. 23(a)(3). Under the "permissive standards" of Rule 23(a)(3), the "representative's claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). "The purpose of the typicality requirement is to assure that the interest of the named representative

aligns with the interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). To determine whether claims and defenses are typical, courts often look to "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Id.* (quotation marks omitted); *see also Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010).

Ruby argues that Oliver does not fit within the proposed class definition. Ruby's argument that Oliver, who signed up with Ruby before November 12, 2012, did not "obtain receptionist services" between November 12, 2012 and May 31, 2018 is incorrect. Ruby construes "obtained" to mean "signed up for receptionist services for the first time." Plaintiffs, however, assert that "obtained" means "received receptionist services." Plaintiffs' definition is the common-sense reading. When "obtain" is properly construed, Oliver did obtain services during the relevant period, even if that law firm first entered into its contract with Ruby for receptionist services before November 12, 2012.

Ruby also argues that Oliver's claims are not typical because Oliver's contract includes a handwritten "contract modification" reflecting that Oliver desired to sign up for the monthly plan with the least number of receptionist minutes. But as explained below, the issue is whether Oliver's purported contract modification changed the meaning of the term "receptionist minutes," not whether Oliver separately negotiated the quantity of receptionist minutes that would be purchased. The handwritten note on Oliver's contract pertains only to the latter and does not suggest that Oliver negotiated for any specific definition of "receptionist minute." Accordingly, the Court finds that Plaintiffs have satisfied the typicality requirement.

### 4. Adequacy of Representation

Rule 23(a)(4) states that before a class can be certified, a court must find that "the representative parties will fairly and adequately protect the interests of the class." This requirement turns on two questions: (1) whether "the named plaintiffs and their counsel have any conflicts of interest with other class members"; and (2) whether "the named plaintiffs and their counsel [will] prosecute the action vigorously on behalf of the class." *Hanlon*, 150 F.3d at 1020. The adequacy requirement is based on principles of constitutional due process, and a court cannot bind absent class members if class representation is inadequate. *Hansberry v. Lee*, 311 U.S. 32, 42-43 (1940); *Hanlon*, 150 F.3d at 1020.

The Court finds that Plaintiffs share an interest with absent class members and do not have claims adverse to absent class members or that would benefit any Representative Plaintiff to the detriment of absent class members. The Court also finds that the Representative Plaintiffs and class counsel will prosecute this action vigorously on behalf of the class. Ruby does not challenge the adequacy of the named Plaintiffs' representation. Accordingly, the Court finds that Plaintiffs and their counsel are adequate representatives.

### 5. Ascertainability

To the extent that Rule 23 also requires, at least implicitly, that the members of the proposed class be objectively ascertainable, that is satisfied in this case.[1] "Ascertainability" means that class members can be identified through "a manageable process that does not require

---

[1] Some district courts have stated that Rule 23 requires, at least implicitly and in some circumstances, that the members of the proposed class be ascertainable based on objective criteria. *See, e.g., Ott v. Mortgage Inv'rs Corp. of Ohio, Inc*., 2014 WL 6851964, at *13 (D. Or. Dec. 3, 2014). In *Briseno v. ConAgra Foods, Inc*., 844 F.3d 1121, 1133 (9th Cir. 2017), however, the Ninth Circuit rejected the argument that plaintiffs in a Rule 23(b)(3) class must show "an administratively feasible way to identify putative class members."

much, if any, individual factual inquiry." *Lilly v. Jamba Juice Co.*, 308 F.R.D. 231, 237 (N.D. Cal. 2014) (quoting William B. Rubenstein, 1 *Newberg on Class Actions* § 3:3 (5th ed.)). This requirement, to the extent that it is a requirement, does not entail that "*every* potential member . . . be identified at the commencement of the action." *Id.* (quotation marks omitted) (emphasis added).

Plaintiffs propose defining the class as:

> All persons or entities in the United States who obtained receptionist services from Defendant Ruby Receptionists between November 2, 2012 and May 31, 2018, pursuant to its form Service Agreements

There are two clear criteria. First, a class member must have received services under Ruby's form Service Agreement. Ruby argues that term "form Service Agreement" is undefined. It is not. Ruby's standard form itself refer to the "Service Agreement." That form states: "These Terms and Conditions and the Ruby Receptionist Service Agreement set forth the entire Agreement between the parties." ECF 108 Ex. 2. Second, a class member must have received services between November 12, 2012 and May 31, 2018. The purported class members who meet these two criteria can be, and indeed have been, identified through Ruby's records.

Ruby also argues that the class cannot be ascertained because some class members may have known about Ruby's actual billing practices and therefore would not have a meritorious claim for breach of contract claim. Plaintiffs agree that if such class members exist, they would not have a claim. The Court agrees that customers who suffered no harm have no breach of contract claim but finds that the existence of a few customers who suffered no harm does not pose an obstacle to class certification. The question here is "'not whether the identity of class members can be ascertained with perfect accuracy at the certification stage but whether the defendant will receive a fair opportunity to present its defenses when putative class members

PAGE 12 – OPINION AND ORDER

actually come forward.'" *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1132 (9th Cir. 2017)

(quoting *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 670 (7th Cir. 2015). Ruby can present

evidence about the knowledge of individual customers at trial or otherwise.[2] If necessary, the

Court has a "variety of procedural tools" that it can use to filter out any class member who does

not have a meritorious claim for breach of contract. *Briseno*, 844 F.3d at 1128. The Court finds

that Plaintiffs can show ascertainability.

## B. Rule 23(b)(3) Requirements

### 1. Predominance

Rule 23(b)(3) requires a court to find that "the questions of law or fact common to class

members predominate over any questions affecting only individual members, and that a class

action is superior to other available methods for fairly and efficiently adjudicating the

controversy." Fed. R. Civ. P. 23(b)(3). This analysis, in accord with Rule 23's "principal

purpose" of "promot[ing] efficiency and economy of litigation," inquires into "the relationship

between the common and individual issues in the case, and tests whether the proposed class is

sufficiently cohesive to warrant adjudication by representation." *Abdullah v. U.S. Sec. Assocs.,*

*Inc.*, 731 F.3d 952, 963-64 (9th Cir. 2013) (quotation marks omitted). The focus of this inquiry,

however, is on "*questions* common to the class"—plaintiffs need not, at this threshold, "prove

that the predominating question[s] will be answered in their favor." *Amgen Inc. v. Conn. Ret.*

*Plans & Tr. Funds*, 568 U.S. 455, 459, 468 (2013) (emphasis in original).

"[T]here is substantial overlap between" the test for commonality under Rule 23(a)(2)

and the predominance test under Rule 23(b)(3). *Wolin v. Jaguar Land Rover N. Am., LLC*, 617

---

[2] The Court addresses below the separate question of whether individualized evidence
would predominate over evidence common to all class members.

F.3d 1168, 1172 (9th Cir. 2010). The predominance test, however, "is 'far more demanding,' and asks 'whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Id.* (citation omitted) (quoting *Amchem*, 521 U.S. at 623-24). To determine whether common questions predominate, the Court begins with "the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011).

### a.  Breach of Contract

#### i.  Liability

Plaintiffs urge the Court to reconsider its earlier ruling (ECF 59) that the Service Agreement (specifically the term "receptionist minute") is ambiguous. The Court declines to reverse its earlier ruling. The Court correctly applied the first step of the *Yogman* framework for contract interpretation under Oregon law. *See Yogman v. Parrott*, 937 P.2d 1019, 1021 (Or. 1997) (describing the first step of the *Yogman* contract interpretation process). The Court analyzed the plain text of the Service Agreement and found the term "receptionist minute" to be ambiguous in two ways. First, how a "receptionist minute" is measured is ambiguous. For example, it is unclear from the plain text whether a "receptionist minute" is measured exactly to the second or fraction of a second and whether it is to be rounded up, rounded down, or rounded to the nearest interval. Second, it is ambiguous whether a "receptionist minute" includes "hold" or "parked" time after a Ruby reception picks up a call, for example by greeting the caller and asking the caller to "hold." Plaintiffs do not identify any additional evidence within the four corners of the Service Agreement that would change the Court's analysis at step one of *Yogman*.

It is important to distinguish between the question that a fact-finder might face at trial and the question before the Court now. Because the Court finds that the term "receptionist minute" is ambiguous, a fact-finder would "examine[] extrinsic evidence of the contracting parties' intent and construe[] the disputed contractual provision consistent with that intent, if such a resolution can be

determined." *Ross Dress For Less, Inc. v. Makarios-Oregon, LLC*, 210 F. Supp. 3d 1259, 1263 (D. Or. 2016) (describing the second step of the *Yogman* contract interpretation process). The jury would consider *all* extrinsic evidence relevant to the parties' intent, including expressions of any common understanding communicated by the parties, to resolve the ambiguous term. Importantly, the jury could consider both individualized extrinsic evidence and extrinsic evidence common to the class.

Here, however, the Court's task here is different. "Neither the categorization of the contract as ambiguous, nor the prospect of extrinsic evidence, necessarily imperils class status . . .". *Red Barn Motors, Inc. v. Nextgear Capital, Inc*., 915 F.3d 1098, 1101 (7th Cir. 2019). The relevant question at this stage is which category of extrinsic evidence—individualized or common—will be outcome determinative of the fact-finder's analysis. If common evidence dictates the outcome, the Court should grant class certification. If, however, the Court finds that the fact-finder would need to focus primarily on individualized evidence to resolve the ambiguities, the Court should deny class certification.

The evidence common to all class members predominates over the individualized evidence. Most of the evidence that Plaintiffs identify for showing that the ambiguous term should be resolved in their favor is common to the entire class. Ruby's online Frequently Asked Questions, or FAQs, stated that Ruby will "only charge for time that the receptionist is involved in the call." ECF 108, Ex. 9. Official training materials repeated this and advised employees to tell customers that Ruby billed only "for the amount of time a receptionist is *live* on the call." ECF 108, Ex. 14 (emphasis added).

Further, emails exchanged among Ruby's staff show that Ruby trained its personnel generally to disclose that Ruby rounded call time up to the next 30-second increment and that Ruby charged for hold time. ECF 116 at 42. There are also Ruby sales scripts, which Plaintiffs

allege mislead prospective clients about Ruby's billing practices by not disclosing the rounding and hold time policies. ECF 121, Ex. 1. These materials are relevant to the meaning of "receptionist minute" and are common to all class members. The Court expresses no position on whether this evidence shows that Ruby misled its customers, but the Court agrees that common evidence will largely assist the jury in answering key and common questions.

Even some of the evidence that Ruby cites in support of its preferred interpretation of the term "receptionist minute" is common to the class, which belies Ruby's argument that individualized evidence predominates. Ruby notes that all its customers were commercial businesses, and therefore all understood that the term "receptionist minute" meant that Ruby would round up to the next 30-second increment. ECF 116 at 43. That argument may persuade a fact-finder that Ruby's customers knew what they were getting. Regardless of the persuasive power of that argument, it still relies on evidence that is common to all the putative class members, namely their status as commercial businesses. The same is true of Ruby's contention at that the word "increment" necessarily implies rounding up and Ruby's argument that its customers were on inquiry notice of the billing and rounding practices because they could see and access Ruby's online billing platform.[3]

---

[3] Just as the Court declines to find that the term "receptionist minute" unambiguously requires Plaintiffs' preferred rounding practices, it also finds that the term does not unambiguously require rounding up to the next 30-second increment. Ruby cited BLACK'S LAW DICTIONARY for the proposition that "increment" can only mean rounding up. *See* ECF 116 at 39. Other dictionaries, however, define "increment" differently—which at the very least implies some ambiguity. *See, e.g.*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1146 (defining "increment," in its fourth definition as "a positive or negative change in the value of one or more of a set of variables") (2002); MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/increment (last visited April 21, 2020) (defining "increment" as the "amount or degree by which something changes).

There is, however, evidence that some putative class members knew about Ruby's billing practices when they signed up. Ruby's Director of Sales emailed one prospective customer that: "We bill on 30 second increments so if you have a call that lasts 20 seconds we would bill you for half a minute, and if you had a call that lasted 40 seconds, we would bill you for a full minute." ECF 118, Ex. 1. That customer signed up for Ruby's services. *See also* ECF 118, Ex. 2-12 (collecting emails from Ruby to prospective customers informing them that Ruby always rounds up to the next 30-second increment). Another customer recalled a telephone call in which a Ruby sales representative informed her that "Ruby billed its time in 30-second increments that were rounded up." ECF 69. Plaintiffs acknowledge, and the Court agrees, that these customers do not have a meritorious claim against Ruby for breach of contract. Based on the entire record at this stage of the litigation, however, these customers appear to be only a small fraction of the putative class.

Evidence that a few customers suffered no harm or cannot prevail on a claim of breach of contract does not defeat class certification. "[E]ven a well-defined class may inevitably contain some individuals who have suffered no harm as a result of a defendant's unlawful conduct." *Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1136 (9th Cir. 2016). Predominance may be absent "if the class is defined so broadly as to include a great number of members who for some reason could not have been harmed by the defendant's allegedly unlawful conduct." *In re Qualcomm Antitrust Litig.*, 328 F.R.D. 280, 310 (N.D. Cal. 2018) (citation and quotation marks omitted); *see also In re Rail Freight Fuel Surcharge Antitrust Litig.*, 292 F. Supp. 3d 14, 137–38 (D.D.C. 2017) (finding class certification inappropriate when 2,000 members of a 16,000 member class suffered no injury). The putative class here consists of approximately 18,000 members; the record contains extrinsic evidence of no more than about 30 uninjured class

members. Because of the few exceptions and "because [the] district court is well situated to winnow out those non-injured members at the damages phase of the litigation, or to refine the class definition," class certification at this time is appropriate. *Torres*, 835 F.3d at 1137.

Ruby's argument that individual customers negotiated their own individual meaning of the term "receptionist minute" is also unavailing. The record shows that many customers, including Oliver, negotiated for different quantities of receptionist minutes. But there is no evidence that the meaning of the term "receptionist minute" was subject to negotiation. That distinguishes this case from *Bernard v. First Nat. Bank of Oregon*, 275 Or. 145 (Or. 1976), and *Wilcox Dev. Co. v. First Interstate Bank of Oregon, N.A.*, 97 F.R.D. 440 (D. Or. 1983). The central question in those cases what whether it was "'likely' that final determination will require as to 'numerous' claims a separate adjudication of each claimant's knowledge" of the ambiguous term." *Bernard*, 275 Or. 145, 157. The record here shows only a few class members who were actively informed of Ruby's billing practices and no class members who negotiated for a particular meaning of the term "receptionist minute." It is unlikely that individualized adjudications will be necessary.

Ultimately, the factfinder need not "parse what oral representations each [sales representative] made to each plaintiff." *Yokoyama v. Midland National Life Insurance Co.*, 594 F.3d 1087, 1093 (9th Cir. 2010). Instead, "the fact-finder will focus on the standardized written materials given to all plaintiffs and determine whether those materials are likely to mislead consumers acting reasonably under the circumstances." *Id.* In sum, the Court expresses no position on whether the extrinsic evidence supports resolving the ambiguity in favor of Plaintiffs or Ruby but agrees with Plaintiffs that mostly common evidence will resolve that ambiguous meaning of the term "receptionist minute."

### ii. Damages

Plaintiffs' damages expert, Mr. Rossi, calculated damages to the nearest second. Ruby argues that Mr. Rossi's methodology does not match Plaintiffs' theory of liability because Plaintiffs' theory of liability is that Ruby breached the contracts by billing in 30-second increments. That argument misconstrues Plaintiffs' theory of liability. Plaintiffs allege that Ruby deprived customers of their full balance of receptionist minutes by inflating the time charged against the balance through rounding up and by charging for hold time. These practices caused customers to use up their minutes balance faster and, consequently, receive fewer minutes than they contracted for and paid. It is incorrect to say that "at the class-certification stage any method of measurement is acceptable so long as it can be applied classwide, no matter how arbitrary the measurements may be." *Comcast Corp. v. Behrend*, 569 U.S. 27, 35-36. (2013). But this translates only to a requirement that Plaintiffs "be able to show that their damages stemmed from the defendants' actions that created the legal liability." *Hatamian v. Advanced Micro Devices, Inc.*, 2016 WL 1042502, at *8 (N.D. Cal. Mar. 16, 2016)). Mr. Rossi's methodology does not appear to be arbitrary; it calculates damages the nearest second for each customer. It also shows that Plaintiffs' damages "stem[] from [Ruby's] actions that created the legal liability." *Id.* Ruby's actions were its billing and rounding practices, and Plaintiffs' damages are the amounts that they were charged for rounding and hold time. Further, whether Mr. Rossi's specific methodology for determining damages is appropriate and admissible is an issue best resolved later in this litigation, and the Court reserves ruling on that question. For now, the Court merely finds that common issues predominate in the calculation of damages if liability were to be found.

### b. Plaintiffs' Other Claims

Plaintiffs also assert claims for breach of the implied covenant of good faith and fair dealing, unjust enrichment, and money had and received. Plaintiffs argue that these claims are

suitable for class certification because the evidence supporting them is the same as for Plaintiffs' claim of breach of express contract. Ruby agrees that the additional claims are subject to the same extrinsic evidence but argues that the extrinsic evidence is predominantly individualized. Ruby objects specifically to class certification of Plaintiffs' claim for unjust enrichment, arguing that a court must "examine the particular circumstances" of each class member to determine the merits of an unjust enrichment claim. *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1274 (11th Cir. 2009).

But Ruby has offered no evidence of differing circumstances beyond the arguments it makes against class certification of the breach of contract claim. Thus, Plaintiffs' unjust enrichment claim does not defeat class certification. The Court also agrees with Plaintiffs and Ruby that the same evidence underlying the breach of contract claim will likely determine the unjust enrichment claim, the money had and received claim, and the claim for breach of the implied covenant of good faith and fair dealing. As discussed above, however, the Court finds that common evidence predominates. These three additional claims thus are suitable for class certification.

### 2. Superiority

Rule 23(b)(3)'s superiority requirement tests whether "classwide litigation of common issues will reduce litigation costs and promote greater efficiency." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). A court looks to "whether the objectives of the particular class action procedure will be achieved in the particular case." *Hanlon*, 150 F.3d at 1023. This inquiry "necessarily involves a comparative evaluation of alternative mechanisms of dispute resolution." *Id.* The Ninth Circuit recognizes that "[d]istrict courts are in the best position to consider the most fair and efficient procedure for conducting any given litigation, and so must be given wide discretion to evaluate superiority." *Bateman v. Am. Multi-Cinema, Inc.*,

623 F.3d 708, 712 (9th Cir. 2010) (quotation marks and citation omitted). Relating to superiority, the purpose of Rule 23(b)(3) is "to allow integration of numerous small individual claims into a single powerful unit." *Id.* at 722. This allows plaintiffs that otherwise likely would be "unable to proceed as individuals because of the disparity between their litigation costs and what they hope to recover. . . 'to pool claims which would be uneconomical to litigate individually.'" *Local Joint Exec. Bd. of Culinary/Bartender Tr. Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1163 (9th Cir. 2001) (quoting *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985)).

Rule 23(b)(3) provides four non-exhaustive factors to consider. They are:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

Regarding the first factor, "[w]here recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010). The amount at stake for each class member is small compared to the cost of litigating individual claims. For example, Oliver bought 100 receptionist minutes per month for $229, and agreed to pay $2.29 per minute for each additional receptionist minute. Oliver's monthly damages equal the value of the time lost because of Ruby's rounding and billing practices. That amount is relatively small compared to the cost for Oliver to litigate the case by itself. It would be unreasonable to expect or require each of the 18,000 class members to mount their own litigation to recover what may amount to hundreds of dollars in damages per class member. Accordingly, "[b]ecause individual

damages pale in comparison to the costs of litigation, this factor points toward certification." *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 316 (N.D. Cal. 2018).

Regarding the second factor, there is a parallel state class action against Ruby pending in Multnomah County Circuit Court, *Maiden Insurance LLC v. Ruby Receptionists, Inc.*, but no individual cases against Ruby. Ruby filed a motion for *Colorado River* abstention last year, which the Court denied. ECF 49. At oral argument, the Court invited Ruby to refile their *Colorado River* abstention motion. Ruby informed the Court that it would not be refiling its abstention motion because it hoped to "receive resolution shortly on whether the putative class's claims will be proceeding on a class-wide basis (or not) in this federal action." ECF 124. This factor weighs in favor of certification.

With respect to the third factor, most putative class members are located outside Oregon. Ruby, however, is based in Oregon. And there is a pending state action in Multnomah County Circuit Court. Consequently, this factor also supports certification.

The fourth factor requires courts to consider the likely difficulties in managing a class action. There is, however, a "well-settled presumption that courts should not refuse to certify a class merely on the basis of manageability concerns." *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1128 (9th Cir. 2017) (quoting *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 663 (7th Cir. 2015)). The Court finds any manageability concerns to be minimal because only a few class members suffered no breach of contract and need to be "weeded out" of the class. There are also management tools available to district courts to assist with any manageability concerns. *See In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 141 (2d Cir. 2001) (listing the "management tools available to" district courts). Moreover, "failure to certify an action under

Rule 23(b)(3) on the sole ground that it would be unmanageable is disfavored and should be the exception rather than the rule." *Id.* at 140 (quotation marks omitted).

## CONCLUSION

Plaintiffs' Motion for Class Certification (ECF 107) is GRANTED, and Ruby's Motion to Preclude Class Certification (ECF 66) is DENIED. The Court certifies a class consisting of:

> All persons or entities in the United States who obtained receptionist services from Defendant Ruby Receptionists between November 2, 2012 and May 31, 2018, pursuant to its form Service Agreements.

If at any time during this litigation it appears that the requirements of Rule 23(a) or Rule 23(b) are no longer satisfied, the Court will consider a motion to decertify the Class or otherwise modify the class definition. *See* Fed. R. Civ. P. 23(c)(1)(C)("An order that grants or denies class certification may be altered or amended before final judgment.").

**IT IS SO ORDERED**.

DATED this 24th day of April, 2020.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge