# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **McKENZIE LAW FIRM, P.A.**, and **OLIVER LAW OFFICES, INC.**, on behalf of themselves and all others similarly situated, | Case No. 3:18-cv-1921-SI **OPINION AND ORDER** |
| Plaintiffs, | |
| v. | |
| **RUBY RECEPTIONISTS, INC.**, | |
| Defendant. | |

Keith S. Dubanevich and Cody Berne, STOLL BERNE PC, 209 SW Oak Street, Suite 500, Portland, OR 97204; Laurence D. King, Matthew B. George, and Mario M. Choi, KAPLAN FOX & KILSHEIMER LLP, 350 Sansome Street, Suite 400, San Francisco, CA 94104; Robert I Lax, LAX LLP, 380 Lexington Avenue, 31st Floor, New York, NY 10168; Jon M. Herskowitz, BARON & HERKSOWITZ, 9100 S. Dadeland Blvd, # 1704, Miami FL; Gregory J. Brod, BROD LAW FIRM PC, 96 Jessie Street, San Francisco, CA 94105. Of Attorneys for Plaintiffs.

Renee E. Rothauge, Misha A.D. Isaak, and Patrick L. Rieder, PERKINS COIE LLP, 1120 NW Couch Street, Tenth Floor, Portland, OR 97209; Andrew R. Escobar and Austin Rainwater, DLA PIPER LLP, 701 Fifth Avenue, Suite 6900, Seattle, WA 98104; Andrew D. Day, DLA PIPER LLP, 400 Capitol Mall, Suite 2400, Sacramento, CA 95814. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

In this class action, class representatives McKenzie Law Firm, P.A. ("McKenzie") and

Oliver Law Offices, Inc. ("Oliver") (collectively, "Plaintiffs") are former clients of Defendant

Ruby Receptionists, Inc., ("Ruby"). Ruby is a business that provides virtual receptionist services

to its clients. On April 24, 2020, the Court certified a class consisting of:

> All persons or entities in the United States who obtained
> receptionist services from Defendant Ruby Receptionists between
> November 2, 2012 and May 31, 2018, pursuant to its form Service
> Agreements.

ECF 128 at 23. Plaintiffs allege breach of contract, unjust enrichment, breach of the duty of good

faith and fair dealing, and money had and received, based on Ruby's allegedly misleading billing

practices. Plaintiffs seek an order for the duration of this lawsuit that limits Defendant's *ex parte*

contact with class members without prior approval of the Court. ECF 134. For the reasons stated

below, the Court grants Plaintiffs' motion.

## STANDARDS

### A.  Rule 23 of the Federal Rules of Civil Procedure

Rule 23 of the Federal Rules of Civil Procedure govern federal class actions. Rule 23(d)

permits a court to issue orders on "procedural matters" to "protect class members and fairly

conduct the action." Fed. R. Civ. P. 23(d)(1)(B), (E). This includes entering appropriate orders

that govern the conduct of counsel and parties. As the Supreme Court has stated:

> Class actions serve an important function in our system of civil
> justice. They present, however, opportunities for abuse as well as
> problems for courts and counsel in the management of cases.
> Because of the potential for abuse, a district court has both the duty
> and the broad authority to exercise control over a class action and
> to enter appropriate orders governing the conduct of counsel and
> parties. But this discretion is not unlimited, and indeed is bounded
> by the relevant provisions of the Federal Rules.

*Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99-100 (1981) (footnotes omitted). When exercising its

authority under Rule 23(d) to limit a defendant's communications to class members, a court need

not find that actual misconduct has occurred; it is enough for a court to find that there is a threat

of abuse or other potential for interference with the rights of the parties. *Id*. at 101; *see also id*.

at 104 ("But the mere possibility of abuses does not justify routine adoption of a communications

ban that interferes with the formation of a class or the prosecution of a class action in accordance

with the Rules."). Further, a court must identify the threatened abuse, weigh the need for a

limitation and the potential interference with the rights of all parties, and enter an order carefully

drawn to limit speech as little as possible, consistent with the rights of all parties under the

circumstances. *Id*. at 101-02. As explained by the Supreme Court:

> [A]n order limiting communications between parties and potential
> class members should be based on a clear record and specific
> findings that reflect a weighing of the need for a limitation and the
> potential interference with the rights of the parties. Only such a
> determination can ensure that the court is furthering, rather than
> hindering, the policies embodied in the Federal Rules of Civil
> Procedure, especially Rule 23. In addition, such a weighing—
> identifying the potential abuses being addressed—should result in
> a carefully drawn order that limits speech as little as possible,
> consistent with the rights of the parties under the circumstances.

*Id*. (footnotes omitted); *see also In re Currency Conversion Fee Antitrust Litig*., 361 F.

Supp. 2d 237, 252 (S.D.N.Y. 2005) ("A court has supervisory authority over a defendant's

communications with putative class members.").

Although *Gulf Oil* addressed a situation in which a district court prohibited all

communications between *any* party or its counsel and the absent class members, including

limiting class counsel from communicating with the class, most courts do not restrict *Gulf Oil* to

those facts but apply the its standards even when a representative plaintiff seeks to limit a

*defendant's* communications with the absent class. For example, in *Cox Nuclear Med. v. Gold

Cup Coffee Servs., Inc*., 214 F.R.D. 696 (S.D. Ala. 2003), the court stated:

> In compliance with [*Gulf Oil*], courts have routinely recognized
> that the moving party must present an evidentiary showing of
> actual or threatened abuse by the party sought to be restrained.
> Two kinds of proof are required. First, the movant must show that
> a particular form of communication has occurred or is threatened
> to occur. Second, the movant must show that the particular form of

> communication at issue is abusive in that it threatens the proper functioning of the litigation. Abusive practices that have been considered sufficient to warrant a protective order include communications that coerce prospective class members into excluding themselves from the litigation; communications that contain false, misleading or confusing statements; and communications that undermine cooperation with or confidence in class counsel.

*Cox Nuclear Med.*, 214 F.R.D. at 697-98 (footnotes omitted); *see generally* 3 William B. Rubstein, 3 *Newberg on Class Actions* § 9.3 (5th ed. 2019) (noting that the Southern District of Alabama's test in *Cox Nuclear Med.* is "cited with particular frequency").

## B.  Rule 4.2 of the Oregon Rules of Professional Conduct

As a result of class certification and appointment of class counsel, an attorney-client relationship is formed between class counsel and all absent class members on all matters regarding the litigation. *See generally* Fed. R. Civ. P. 23(g)(4) ("Class counsel must fairly and adequately represent the interests *of the class*.") (emphasis added); *see also* Restatement (Third) of the Law Governing Lawyers § 99, cmt, 1 (2000) ("[A]ccording to the majority of decisions, once the proceeding has been certified as a class action the members of the class are considered the clients of the lawyer for the class."); MANUAL FOR COMPLEX LITIGATION § 21.33 (4th ed. 2004) ("Once a class has been certified, the rules governing communications apply as though each class member is a client of the class counsel.") (footnote omitted).[1]

---

[1] Washington law is similar. *See Bower v. Bunker Hill Co*., 689 F. Supp. 1032, 1033-1034 (E.D. Wash. 1985) (noting that after a court enters an order certifying a class, an attorney-client relationship arises between all members of the class and class counsel, and defense counsel is thereafter prohibited by Rule 4.2 of Washington's Rules of Professional Conduct from communicating with class members about "the subject of the representation").

Based on this attorney-client relationship, the rules of professional ethics governing attorneys severely restrict a defendant's opportunities to communicate with class members. As explained in a leading class action treatise:

> Following class certification, a defendant may retain its precertification desires to communicate with absent class members so as to gather information from class members, to attempt to compromise or settle potential class members' claims, *or to explain directly to the class the defendant's view of the litigation. However, the certification decision radically restricts the defendant's opportunities to so communicate for a simple reason: following certification, class counsel and absent class members have a formal, if unique, attorney-client relationship. Absent class members are therefore "represented parties," and ethics rules prohibit opposing counsel from contacting them directly. Defense counsel must therefore communicate with the opposing class members through class counsel after this point.* To be sure, the restriction applies only to the subject of the litigation and excludes other, non-litigation-related communications. But the restriction means that if defendants are permitted to make settlements offers to individual class members after certification—a question that has divided the courts—such offers must be communicated to class counsel or any other attorney retained by the class member.
>
> Given the flat restriction on communications with represented parties, there are few cases in which plaintiffs have had to seek protective orders prohibiting such communications although when they have, courts have found the authority to regulate in both ethics rules and *Gulf Oil's* principles more generally. The same remedies available in other contexts—prospective protective orders, corrective notice, and invalidation of improperly obtained agreements or other documents—remain available, but the more severe remedies of invalidation of opt-outs and court sanctions are more likely to be utilized for violations occurring after a class has been certified.

3 *Newberg on Class Actions* § 9.9 (footnotes omitted) (emphasis added).

Rule 4.2 of the Oregon Rules of Professional Conduct provides the applicable ethics rule governing attorneys in Oregon.

> In representing a client or the lawyer's own interests, a lawyer *shall not communicate or cause another to communicate on the*

> *subject of the representation* with a person the lawyer knows to be
> represented by a lawyer on that subject unless:
>
> (a)    the lawyer has the prior consent of a lawyer
>        representing such other person;
>
> (b)    the lawyer is authorized by law or by court order
>        to do so; or
>
> (c)    a written agreement requires a written notice or
>        demand to be sent to such other person, in which
>        case a copy of such notice or demand shall also be
>        sent to such other person's lawyer.

Or. Rules Prof'l. Conduct R. 4.2 (emphasis added); *see also Gulf Oil*, 452 U.S. at 104 n.21

(noting that "the rules of ethics properly impose restraints on some forms of expression" and

citing the then-current version of the ABA model rule prohibiting contact by opposing counsel

with represented parties); ABA Model Rules of Prof'l. Conduct R. 4.2 (current version).

Thus, if an attorney knows that a person is represented by another attorney, Oregon's

Rule 4.2 prohibits the first attorney from communicating, directly or indirectly, with that person

regarding the subject matter of the representation. It also prohibits the first attorney from

causing, in any way, anyone else to have such a communication. This includes a prohibition

against the first attorney instructing, advising, or in any way assisting a client in communicating

with an adverse party represented by another attorney on the subject matter of that

representation. The Oregon Rules of Professional Conduct, however, do not by themselves

preclude a non-attorney party from communicating with a represented adverse party regarding

the litigation, provided there is no participation or assistance by the client's attorney, directly or

indirectly, in the communication to the adverse party. *See* Oregon Formal Ethics

Opinion 2005-147.

## DISCUSSION

### A.  Whether Communication with Absent Class Members Is Threatened

The Court finds the following facts. On April 27, 2020, three days after the Court certified a class in this case and appointed Class Counsel (ECF 128), Class Counsel emailed Defense Counsel, stating that after certification Class Counsel represents all absent class members in this matter and, accordingly, Defense Counsel may not contact class members either directly or through third parties. Class Counsel asked whether Defense Counsel agreed with that position, to avoid the need for Class Counsel to seek an order from the Court under Rule 23(d). ECF 135-1 at 5.

Defense Counsel responded three days later, on April 30, 2020, stating that Defense Counsel did not agree with Class Counsel's position. Defense Counsel asserted that "at least prior to the close of the opt-out period, there is a limited or provisional representation in place." ECF 135-1 at 3. Defense Counsel also stated: "We also disagree with your blanket assertion that [Defendant] Ruby itself must 'cease and desist from any communications with the Class regarding the claims, defenses, or subject matter of this litigation.'" *Id*. The next day, May 1, 2020, Class Counsel responded, explaining that Class Counsel did not agree with Defendant's interpretation of its rights, obligations, and restrictions.

The Court agrees with Class Counsel and finds Defendant's position without merit. *See Kleiner v. First Nat. Bank of Atlanta*, 751 F.2d 1193, 1207 n.28 (11th Cir. 1985) ("At a minimum, class counsel represents all class members as soon as a class is certified . . . if not sooner") (citations omitted); *Van Gemert v. Boeing Co*., 590 F.2d 433, 440 n.15 (2d Cir. 1978), *aff'd*, 444 U.S. 472 (1980) ("A certification under Rule 23(c) makes the Class the attorney's client for all practical purposes[,]"); *Roper v. Consurve, Inc*., 578 F.2d 1106, 1110 (5th Cir. 1978), *aff'd sub nom. Deposit Guaranty National Bank v. Roper*, 445 U.S. 326 (1980) (same).

The Court finds that Defense Counsel's response to Class Counsel is circumstantial evidence of a threatened communication with absent class members. In response to the statements from Class Counsel (either on April 27 or May 1), Defense Counsel did not state that they would refrain from contacting absent class members before the close of the opt-out period, at least without further direction from the Court. By analogy, if a property owner asks a person not to enter the owner's property and the person responds by saying that the person has the legal right to enter the owner's property without permission, that reasonably may be interpreted as a threat to trespass. It would be a sufficiently concrete dispute to allow the property owner to seek declaratory relief (and may even support an order for preliminary injunctive relief, if the other elements needed for that relief were shown).

Defense Counsel also told Class Counsel that its own client, Defendant, had the legal right to contact class members about this class action lawsuit, even after the opt out period had closed. Here, the Court agrees with Defense Counsel, provided that there is no participation, advice, or assistance of any kind by Defense Counsel. Merely asserting, correctly, that Defendant has the right to contact absent class members may not by itself be a "threat" to do so, but there is more evidence.

Before certification, either Defense Counsel or Defendant itself contacted about a dozen putative class members and obtained declarations that Defendant submitted in opposition to Plaintiff's motion for class certification. Thus, there is a history of Defendant (or its counsel) contacting absent class members about this lawsuit, at least before certification.

In Defendant's opposition to Plaintiff's memorandum, Defendant states:

> it is well settled that a defendant in a class action lawsuit may continue to talk to its customers – even about the class action lawsuit – so long as the defendant adheres to a few simple principles designed to prevent coercion.

ECF 133 at 4. Defense Counsel also stated during the hearing: "We're seeking to preserve the company's right to have direct communications with its clients who are class members." Hearing (5/27/20) Tr. at 36. As Defense Counsel explained, this includes the topic of the litigation itself. During the hearing, Defense Counsel stated that Defendant itself should be allowed to initiate a communication with its clients, including class members, about this lawsuit. For example, Defense Counsel argued, Defendant may want to tell its clients the following:

> [Y]ou may have seen this lawsuit in the news. We thought you might want to know more about it. First of all, the basis of the lawsuit is as follows: We've been sued in federal and state court about our billing practice of rounding up to the nearest 30-second increment. We disagree with the lawsuit and are vigorously defending it, but if you want more information or want to learn more about it we urge you to go to the website that's been put up by the plaintiffs.

*Id*. at 42. (The Court notes that this is only partial description of Plaintiffs' claims. Plaintiffs also allege misrepresentations and half-truths relating to Defendant's charges for "hold" time.)

Although it is a close question, the Court is satisfied that this evidence, taken together, including Defense Counsel's past communications about this lawsuit with putative class members (*i.e*., before certification), shows a threatened communication is more than a theoretical possibility. That, however, does not end the analysis.

## B. Whether Communication with Absent Class Members Risks Abuse

The next step in the analysis is to consider whether allowing Defendant (even without any assistance or participation by its counsel) directly to communicate with absent class members about this lawsuit, its merits, or its Class Counsel creates a risk of abuse. The Eleventh Circuit explained this risk generally.

> Unsupervised, unilateral communications with the plaintiff class sabotage the goal of informed consent by urging exclusion on the basis of a one-sided presentation of the facts, without opportunity

> for rebuttal. The damage from misstatements could well be irreparable.

*Kleiner*, 751 F.2d at 1203. As the Eleventh Circuit also noted, the risk of abuse is heightened

when the class and the defendant are involved in an ongoing business relationship.

> A unilateral communications scheme, moreover, is rife with potential for coercion. "[I]f the class and the class opponent are involved in an ongoing business relationship, communications from the class opponent to the class may be coercive." Note, Developments in the Law—Class Actions, 89 Harv.L.Rev. 1318, 1600 (1976). *See also* H. Newberg, *Newberg on Class Actions*, current supp. § 2690f (Feb. 1984); Comment, 1980 Duke L.J. at 363.

*Kleiner*, 751 F.2d at 1202.

Defendant correctly observes that the two class representatives are each law firms, arguing that their legal sophistication makes them less likely to be coerced or deceived by communications relating to this lawsuit. Class Counsel replies that although some class members are attorneys, few or none are likely to practice in areas that make them experts in the subject matter or claims of this case. Class Counsel notes that one class member is a solo practitioner focused on representing individuals with disabilities (ECF 69); another is an attorney who practices business, elder law, real estate, and estate planning (ECF 72); and several others are criminal defense attorneys (ECF 74 and ECF 75). Class Counsel also states that other class members are not attorneys, including an owner of a real estate agency (ECF 70), a retailer of home door hardware (ECF 71), a financial planner (ECF 76), a beef producer (ECF 77), and an electrical contractor (ECF 135-2).

Defense Counsel's past conduct in this case also suggests a risk of abuse. Defense Counsel spoke by telephone with Mr. Justin Enger, a former employee of Defendant. After speaking by telephone with Mr. Enger, Defense Counsel prepared a draft declaration and sent it to Mr. Enger. Upon reading this draft, Mr. Enger responded by email to Defense Counsel,

stating: "There are some portions that I definitely [do] not feel too comfortable with. Please see below the parts that need correction in red below[.]" ECF 104 at 9, quoting from ECF 96-6 at 4. Defense Counsel made the corrections that Mr. Enger requested, and Mr. Enger signed the revised draft declaration. Class Counsel points to this as a prior instance of at least attempted abuse, albeit of a former employee and not a class member.

Again, this too is a close question, but the Court is satisfied that the evidence shows a realistic risk of abuse. The final step is weighing the need for a limitation and the potential interference with the rights of all parties and, if appropriate, entering an order carefully drawn to limit speech as little as possible.

## C.  Whether a Narrowly Tailored Order Can Be Drawn

In weighing the rights of all parties, the Court considers the needs of both sides. On one side, the Court is concerned, as discussed by the Eleventh Circuit, with the risk of unsupervised, unilateral communications with the plaintiff class sabotaging the goal of informed consent by urging exclusion based on a one-sided presentation of the facts, without opportunity for rebuttal. On the other side, the Court recognizes that Defendant has a legitimate need to discuss with its clients, even if those clients are class members, matters in the ordinary course of Defendant's business that are unrelated to this lawsuit. The Court will not interfere with this legitimate need.

With regard, however, to Defendant's interest in *initiating* communications with its clients *about this lawsuit*, given that it is clear that there can be no involvement by Defense Counsel, it would be foolhardy for Defendant to initiate any communication with class members about this lawsuit. Thus, no legitimate need would be harmed by restricting Defendant from doing so. The Court also notes that this case involves allegations by Plaintiffs that Defendant previously misled class members, either through misrepresentation or half-truths and only presented accurate facts when a client asked precisely the right question.

PAGE 11 – OPINION AND ORDER

Defendant also may find that a *class member initiates a communication* about this lawsuit when communicating with Defendant. In that circumstance, Defendant must be allowed to give an appropriate response. Weighing all these considerations, the Court believes that it can fashion a narrowly tailored order. Accordingly, the Court hereby enters the following order.

## ORDER

1.    For the duration of this lawsuit, Defense Counsel are prohibited from communicating, directly or indirectly, with any class member without prior consent of Class Counsel or leave of Court.

2.    For the duration of this lawsuit, Defendant Ruby Receptionists, Inc. is prohibited from *initiating* any communication with any class member regarding or referring to this lawsuit, its claims or defenses, or its Class Counsel without prior consent of Class Counsel or leave of Court.

3.    For the duration of this lawsuit, if Defendant Ruby Receptionists, Inc. receives a communication from any class member that regards or refers to this lawsuit, Defendant may respond *only* by stating that it may not discuss this lawsuit or anything about it with any client or former client, or words to that effect. Further, Defendant must inform all its employees and agents, who are likely in the ordinary course of Defendant's business to receive any communication from a client or former client, about this restriction and Defendant's obligations under this Order.

4.    Nothing in paragraphs (2) or (3) of this order shall restrict or prohibit in any way Defendant's communications with its clients, former clients, or prospective clients in the ordinary course of business, provided those communications do not mention, refer, or relate to this lawsuit, its claims or defenses, or its Class Counsel.

5.    For the duration of this lawsuit, if Defendant desires to initiate any communication to any class member regarding or referring to this lawsuit, its claims or defenses, or its Class Counsel, Defendant must first obtain the written prior consent of Class Counsel or the Court.

6.    After conferring with the opposing party, any party may ask the Court to modify any provision of this Order.

**CONCLUSION**

The Court GRANTS Plaintiffs' motion for an order limiting Defendant's *ex parte* contact with class members without prior approval of the Court (ECF 134) and imposes the ORDER stated above.

**IT IS SO ORDERED**.

DATED this 29th day of May, 2020.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge