## UNITED STATES DISTRICT COURT

### DISTRICT OF OREGON

### PORTLAND DIVISION

| | |
|---|---|
| McKENZIE LAW FIRM, P.A., and OLIVER LAW OFFICES, INC. on Behalf of Themselves and All Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> RUBY RECEPTIONISTS, INC., <br><br> Defendant. | Case No. 3:18-cv-01921 |

### CORRECTED CLASS ACTION SETTLEMENT AGREEMENT

This Class Action Settlement Agreement (the "Agreement") is made and entered into as of the 17th day of February, 2021, by and among (1) McKenzie Law Firm, P.A. and Oliver Law Offices, Inc., (the "The McKenzie Class Representatives"), on behalf of themselves and all others similarly situated, (2) Maiden Insurance, LLC ("Maiden") on behalf of itself and all others similarly situated (together, the "Settlement Class" as defined below), and (3) Ruby Receptionists Inc. ("Ruby").

1.  <u>RECITALS</u>

    1.  On or about November 2, 2018, McKenzie Law Firm, P.A. and Oliver Law Offices, Inc. filed an action in the United States District Court for the District of Oregon, captioned *McKenzie Law Firm v. Ruby Receptionists, Inc.*, No. 3:18-cv-01921 (SI) (the "Federal Action").

1

2.    On or about October 13, 2017, Shapiro Law Group, P.A., filed an action in the Circuit Court of Oregon, Multnomah County, captioned *Shapiro Law Group v. Ruby Receptionists, Inc.*, No. 17 CV 48545, and on June 20, 2019 Maiden was substituted as Plaintiff in that action, which became captioned *Maiden Insurance, LLC v. Ruby Receptionists, Inc.*, No. 17CV48545 (the "State Action").

3.    The Complaints in the Federal and State Actions both asserted that Ruby breached its contracts with its customers by miscalculating call length by rounding up the length of calls to the next highest thirty second interval and including time callers spent in a hold queue waiting for a receptionist to handle the call.  The Complaints asserted causes of action for breach of contract, breach of the implied duty of good faith and fair dealing, restitution, unjust enrichment and assumpsit under Oregon Law.

4.    On April 24, 2020, the Court in the Federal Action certified a Class of all persons or entities in the United States who obtained receptionist services from Ruby between November 2, 2012 and May 31, 2018 and appointed the undersigned counsel as Class Counsel.

5.    On June 15, 2020, the Court in the State Action entered a stay of proceedings, pending the determination of the Claims in the Federal Action.

6.    On August 3, 2020 the Court in the Federal Action appointed The Notice Company of Hingham, Massachusetts as Notice Administrator (the "Administrator").

7.    The undersigned Class Counsel are familiar with the claims being settled and the defenses in the Federal and State actions.  Class counsel have had the opportunity

150577082.3

to conduct, and have conducted, extensive discovery and investigation relating to the events alleged in the Complaints.

8.     The McKenzie Class Representatives, Maiden and their counsel believe that the Actions have merit.  Ruby and its counsel believe that Ruby has valid defenses. The terms of this Agreement were reached after extensive, bona fide arm's-length negotiations among counsel for the parties, including extensive mediation before Hunter R. Hughes, III, Esq., with fees discussed only after material agreement was reached as to the benefits to be supplied to the Settlement Class (as defined below) in exchange for their Releases hereunder.

9.     The parties and their counsel acknowledge the uncertain outcome and the risk of further litigation, as well as the difficulties, delays, and costs inherent in such litigation.  The McKenzie Class Representatives, Maiden and Class Counsel have also taken into account the substantial benefits conferred on the McKenzie Class Representatives, Maiden and the Settlement Class (as defined below) by the settlement set forth in this Agreement.  The McKenzie Class Representatives, Maiden and their counsel have therefore determined that the settlement set forth in this Agreement is fair, reasonable, and in the best interests of the McKenzie Class Representatives, Maiden and the Settlement Class.

10.     The parties want to avoid the substantial expense, inconvenience, and distraction of continuing to litigate the Actions through trial and appeals.

NOW, THEREFORE, in consideration of the mutual covenants and other consideration described below, and subject to approval of the Federal Court, the parties, by and through their respective undersigned counsel agree as follows:

3

150577082.3

2.  <u>DEFINITIONS</u>

The following terms shall have the following meanings when used herein (it being understood that other terms are defined elsewhere in this Agreement):

1.  "Class Counsel" means Keith Dubanevich, Stoll Berne Lokting & Shlachter, P.C.; Laurence King, Kaplan Fox & Kilsheimer LLP; Robert I. Lax, Lax LLP; Jon M. Herskowitz, Baron & Herskowitz LLP; and Gregory J. Brod, Brod Law Firm, P.C.

2.  "Court" means the United States District Court for the District of Oregon, unless otherwise specified.

3.  "Effective Date" means the first date by which all the conditions and events specified in Section 13 have been met and have occurred.

4.  "Fee Application" means the application to be filed by Class Counsel by which they will seek an award of attorneys' fees and expenses.

5.  "Final," with respect to the Judgment, means that the Judgment shall have become non-appealable and shall not have been reversed, vacated, or modified.  If the Judgment is set aside, modified in a form not mutually agreeable to the parties, vacated or reversed (and not fully reinstated on further appeal), then the Judgment is not Final, and the Effective Date cannot occur.

6.  "Final Settlement Hearing" means the hearing to be held by the Court to determine whether the settlement set forth in this Agreement should be finally approved as fair, reasonable, and adequate.

7.  "Judgment" means the Judgment and Order of Dismissal of the Action provided for in Section 12.

4

150577082.3

8.     "Person" means any individual, corporation, partnership, or other entity.

9.     "Releasor" or "Releasors" means, without limitation, the McKenzie Class Representatives, Maiden and each and all of the Settlement Class Members who have not timely requested exclusion from the Settlement Class pursuant to Section 9.7.

3.    <u>THE SETTLEMENT CLASS</u>

1.     For purposes of this settlement and Agreement only, and for no other purpose, "Settlement Class" shall mean all persons or entities in the United States who obtained receptionist services from Ruby between October 13, 2011 and May 31, 2018.

2.    Excluded from the Settlement Class are:

(a)    Ruby, its affiliates, its Directors and Officers, the attorneys of any party, and the Court and its personnel.

(b)    Persons who have timely and validly opted out of the Settlement Class pursuant to Section 9.7.

(c)    Persons or entities who have previously opted out of the Federal Action in response to the Notice of Pendency previously provided pursuant to the Court's August 3, 2020 Order Regarding Notice.

4.    <u>SETTLEMENT BENEFITS</u>

1.     Ruby agrees that in consideration of the Releases set forth in Section 5, Ruby will provide to each Releasor the benefits described in this Section 4.

2.    <u>Vouchers For Services Provided By Ruby and Its Affiliates</u>

1.    Commencing with the later of July 1, 2021 or the Settlement Effective Date, Ruby will distribute, through the Administrator, Vouchers for services to be provided by

5

Ruby and its affiliates in the total amount of $8 Million and, with respect to individual Settlement Class Members, an amount not to exceed the amount allocated to each Settlement Class Member per the methodology outlined in Section 4.2.3 below.

2.　Vouchers shall be redeemable only for self-service chat provided under the brand Pure Chat or Reception services provided by Ruby.  Vouchers will not be redeemable for any other service.

3.　Vouchers will be distributed to Settlement Class Members automatically via the Administrator, without need for filing a claim.  The dollar value of an individual Voucher to be distributed to each Settlement Class Member shall be computed according to the following methodology:

(a)　An amount of each Settlement Class Members' pro rata share of $8 Million in total available Vouchers shall be fixed by first determining the percentage of Ruby's total receptionist billings for the Settlement Class Period represented by the Settlement Class Member's billings for the period, less any amounts previously credited from the use of Ruby's money back guarantee policy.

(b)　A Settlement Class Member that either never paid for Ruby service or was refunded all monies paid for Ruby service shall have a pro rata share of zero dollars ($0) and receive no Vouchers.

(c)　A Settlement Class Member whose pro rata share as determined according to Section 4.2.3(a) is greater than zero dollars ($0) but less than $49.00, shall be entitled to a Voucher in the amount of $49.00.

6

(d)     A Settlement Class Member whose pro rata share as determined according to Section 4.2.3(a) is greater than $49.00, shall be entitled to a Voucher, in an amount equal to their pro rata share of the difference between $8 Million and the amount represented by the Vouchers described in Section 4.2.3(c); provided however that the total redeemable amount of all Vouchers to be allocated pursuant to Sections 4.2.3(b), (c), and (d) shall not exceed $8 Million.

(e)     Any Settlement Class Member or transferee not then a current customer of Ruby who elects to redeem a Voucher for receptionist services that is for an amount less than the minimum monthly price of a published receptionist service package (as of the date of this Agreement, $319.00 per month) must subscribe to, and pay the additional price for, at least the minimum published package at the time of redemption.

4.     Vouchers shall be transferable by Settlement Class Members one time to any person or entity.  The Settlement Administrator shall create a protocol to track the transfer of Vouchers in the avoidance of fraud, which shall be overseen by Class Counsel and Ruby.

5.     Vouchers will be distributed to Settlement Class Members in a maximum of six quarterly allotments over a period beginning the later of July 1, 2021, or the Settlement Effective Date.  Vouchers will be distributed according to the following schedule:

(a)     1,000 Settlement Class Members will receive Vouchers in the first quarter after the Settlement Effective Date;

150577082.3

(b)     3,400 Settlement Class Members will receive Vouchers in the second quarter after the Settlement Effective Date;

(c)     3,400 Settlement Class Members will receive Vouchers in the third quarter after the Settlement Effective Date;

(d)     3,400 Settlement Class Members will receive Vouchers in the fourth quarter after the Settlement Effective Date;

(e)     3,400 Settlement Class Members will receive Vouchers in the fifth quarter after the Settlement Effective Date;

(f)     The remaining Settlement Class Members will receive Vouchers in the sixth quarter after the Settlement Effective Date;

(g)     Ruby may in its sole discretion decide to exceed the number of Settlement Class Members to which Vouchers are distributed per quarter stated in Sections 4.2.5(a)-(f).

6.     Subject to the schedule provided in Section 4.2.5, Ruby shall have the right to determine in its sole discretion which Settlement Class Members shall receive Vouchers in each quarter, and in no event will Ruby be required to redeem Vouchers in an amount greater than $1.33 million dollars in any one quarter or to redeem Vouchers from current receptionist service customers in an amount greater than $575,000 in any one quarter.

7.     To that end, and to facilitate Voucher redemption within Ruby's billing system, Ruby may work with the Administrator to develop a consolidated file of Vouchers by Ruby client identification numbers and a unique code number for each Voucher.

8.     A Settlement Class Member that intends to activate service and redeem a Voucher in the first billing period after receipt must inform Ruby of this intent at the time of

8

signup. Ruby may in its sole discretion defer activation of service for a period not to exceed 90 days, provided however that Ruby will make good faith efforts to activate service as promptly as reasonably practicable given business considerations such as staffing capacity. This paragraph does not apply to active Ruby customers that will redeem Vouchers for ongoing service.

9.      A Voucher will be valid for a period running from the date of its actual distribution to a Settlement Class Member until the latter of (a) one year, or (b) the minimum period of time necessary to utilize the full value of the Voucher.

10.      Vouchers redeemed for receptionist services are redeemable only for monthly base minutes. It is expressly understood that Vouchers may not be redeemed for the cost of overage minutes or for applicable taxes, and Settlement Class Members shall be responsible for any charges for overage minutes beyond their monthly plan base allotment and for any applicable taxes.

11.      A Voucher may be redeemed only for a single Ruby service and only for a continuous, uninterrupted period of service. A Voucher may not be applied to more than one Ruby service or to discontinuous periods of service. If a Voucher is redeemed for one period of Ruby service and then, for any reason including cancelation, not used in the immediately subsequent billing period, the Voucher will thereafter be unredeemable and without residual value. A Voucher must be redeemed for at least the minimum published service price or greater during the entirety of the redemption period.

12.      Vouchers shall be useable subject to Ruby's terms of use and usual standards of service, and not in violation of such standard terms applicable to other Ruby customers. Settlement Class Members will still be required to pay for any amount exceeding the Voucher value in order to cover i) the minimum monthly service price outlined in Sections

150577082.3

4.2.3(e), ii) overages and iii) applicable taxes.  The Settlement Administrator shall design a Voucher that will contain text advising recipients of restrictions and requirements on the use of Vouchers pursuant to this section.

13.     Ruby may impose reasonable additional requirements for usage of Vouchers consistent with its standard business practices when applied to its customers generally.  Such reasonable additional requirements may include without limitation: requiring a valid credit card number upon signup, requiring 30 days' notice before cancelation of service, and requiring customers to assume responsibility for monitoring usage of receptionist minutes to avoid incurring overage charges.

14.     The Administrator will provide Ruby and Class Counsel with a summary report on the electronic delivery of Vouchers, including but not limited to send date, open date, soft bounces, and hard bounces, and any click throughs to imbedded links.  The Administrator will provide Ruby with a summary report on the mail delivery of Vouchers including but not limited to send date and returned Vouchers.

15.     Ruby retains the right to change prices of their services, provided however that in no event will Ruby charge Voucher holders prices higher than those published on Ruby's website or otherwise generally prevailing for Ruby customers.

16.     Ruby may communicate directly with settlement class members concerning the Voucher process, the nature and use of Vouchers, and other topics related to the administration of this settlement.  Where appropriate, Ruby may direct settlement class members to the Administrator or Class Counsel for answers to their questions.  Ruby may also communicate with settlement class members concerning continued use of Ruby's products and services after their Vouchers have expired, consistent with the provisions of this Agreement.  Ruby may not

150577082.3

communicate with settlement class members in such a way that would interfere with the administration of the Voucher process as described in this Agreement.

       3.     <u>Commitment to Disclosure</u>

       1.     From the Effective Date through a period running for no less than three years, Ruby will maintain specific measures to describe its billing practices to members of the Class and other Ruby customers according to the guidelines below.

       2.     As it has since at least August 2018, after the lawsuit was filed, in its form Terms and Conditions Ruby will describe its billing practices in a similar level of detail as the following:

> Receptionist minutes are billed in 30-second increments and calls are rounded up to the nearest 30-second mark. As an example, if a call is ten seconds long, it will be billed as 30 seconds (or half a receptionist minute). For inbound calls, receptionist time is calculated starting from the time the receptionist receives the call and ending when a receptionist transfers the call through to someone, or to voice mail, or otherwise disconnects because the call is over. We include hold time and exclude the talk time once a call is transferred to you or your voicemail box.

As soon as commercially practicable after the Settlement Effective Date, the word "nearest" will be changed to "next." Notwithstanding the foregoing, Ruby reserves the right to change its billing and pricing methodologies inclusive of how it calculates Receptionist Minutes, in which case it will make full disclosure of the new practices.

       3.     As it has since after the lawsuit was filed Ruby will continue to train its Customer Happiness staff to describe Receptionist Minutes in terms substantially consistent with

150577082.3

subsection 2 of this section, disclosing that receptionist minutes are calculated in a manner that rounds up all calls to the next highest 30-second interval and includes time callers are on hold.

        4.    Ruby marketing materials that discuss pricing will be substantially consistent with Ruby's form Terms and Conditions in describing how receptionist minutes are calculated and hold time is charged.

5.    <u>RELEASES</u>

        1.    Upon the Effective Date, in exchange for the consideration specified herein and save and except for the rights, duties and obligations of this Agreement, the Releasors, on behalf of themselves and any and all of their respective successors-in-interest, affiliates, assigns, heirs, insurers, executors, officers, directors, agents, employees, attorneys, parent companies, subsidiaries, administrators, principals, shareholders, representatives, partners, joint venturers, predecessors-in-interest, trusts, trustors, trustees, beneficiaries, and all others who may take any interest in the matter herein, jointly and severally, fully and forever release, acquit and discharge all Ruby and all Ruby affiliated companies, and their respective successors-in-interest, affiliates, assigns, heirs, insurers, executors, officers, directors, agents, employees, attorneys, parent companies, subsidiaries, administrators, principals, shareholders, representatives, partners, joint venturers, predecessors-in-interest, trusts, trustors, trustees and beneficiaries and all others who may take any interest in the matter herein from all claims, causes of action, demands, losses or damages of any kind, whether based on contract, tort, statutory or other legal or equitable theory of recovery, whether now known or unknown, suspected or unsuspected, existing, claimed to exist or which can ever hereinafter exist, arising or which could be claimed to arise out of or in connection with, or related in any way to the claims relating to Ruby's billing practices, alleged or referred to in the Federal or State Complaints, including but not limited to claims sounding in

12

the contract or consumer protection laws of the United States or of any state or other jurisdiction in the United States, as well as under the unfair or deceptive trade practices, trade regulation, consumer fraud, fraudulent misrepresentation and false advertising law of the United States or any state or other jurisdiction in the United States, including but not limited to any claims relating to Ruby's billing practices (the "Released Claims"). The Release contained herein shall not constitute a release of or relieve the parties of any of their respective future obligations under this Agreement.

2.       The Releasors acknowledge that the consideration exchanged in this Agreement is intended to and will release and discharge any claim and/or cause of action by them, or any of them, as described in Section 5.1 above, with regard to any unknown or future damage, loss or injury, and that they, and each of them, do hereby waive any rights under California Civil Code Section 1542 (or similar law of any other state or jurisdiction), which reads as follows:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT, AND REASONABLY COULD NOT HAVE KNOWN, TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.**

3.       The Releasors acknowledge, warrant, and represent that they are familiar with Section 1542 of the California Civil Code (or similar law of any other state or jurisdiction) and that the effect and import of that provision has been fully explained to them by their respective counsel.

4.       The Releasors acknowledge that there is a risk that subsequent to the execution of this Agreement, one or more of the Releasors will incur or suffer losses, damages, or injuries related to the subject matter of this Agreement, which are unknown and unanticipated at the time this Agreement is signed. The Releasors, and each of them, hereby assume the above-mentioned

13

150577082.3

Exhibit 1
Joint Declaration in Support of Motion for Final Approval and Award of Attorney Fees and Costs and Service Awards to Plaintiffs
Page 13 of 33

risks and understand that this Agreement shall apply to all unknown or unanticipated claims,

losses, damages or injuries relating to the subject matter of this Agreement, as well as those

known and anticipated, and upon advice of legal counsel, the Releasors, and each of them, do

hereby waive any and all rights under the aforesaid Section 1542. The Releasors acknowledge

that they fully understand that they may hereafter discover facts in addition to or different from

those which they now know or believe to be true with respect to the subject matter of this

Agreement, but that it is their intention hereby to fully, finally and forever release all claims,

obligations and matters released herein, known or unknown, suspected or unsuspected, which do

exist, may exist in the future or heretofore have existed between the Releasors and Ruby, and

that in furtherance of such intention, the releases given herein shall be and remain in effect as full

and complete releases of the matters released herein, notwithstanding the discovery or existence

of any such additional or different facts.

5.      The parties to this Agreement each represent to the other that they have received

independent legal advice from attorneys of their own choosing with respect to the advisability of

making the settlement provided for in this Agreement, and with respect to the advisability of

executing this Agreement, that they have read this Agreement in its entirety and fully understand

its contents, and that each is executing this Agreement as a free and voluntary act.

6.      The covenant not to sue and the releases in this Agreement shall extend and inure

to the benefit of all Ruby affiliated companies, including but not limited to Ruby Receptionists,

Inc. and its respective successors-in-interest, affiliates, assigns, heirs, insurers, executors,

officers, directors, agents, employees, attorneys, parent companies, subsidiaries, administrators,

principals, shareholders, representatives, partners, joint venturers, predecessors-in-interest, trusts,

14

150577082.3

trustors, trustees and beneficiaries and all others who may take any interest in the matter herein (collectively, the "Released Parties").

       7.      Each of the Releasors represents and warrants to each Released Party that the Releasor has not heretofore assigned, hypothecated, or otherwise transferred, or attempted to assign, hypothecate or transfer, any claim or claims against the Released Parties and that there is no other person or legal entity that has not executed this Agreement as a Releasing Party that has any interest in any such claim or claims against the Released Parties. Each Releasor hereby agrees to indemnify and hold harmless all Released Parties from any and all liabilities, claims, demands, obligations, damages, costs, expenses and attorneys' fees arising from or related to any claim which, if true, would constitute a breach of this representation and warranty including, but not limited to, all claims resulting from anyone asserting such interest, assignment, hypothecation or transfer.

6.     <u>ATTORNEYS' FEES AND EXPENSES</u>

       1.      The amount of attorneys' fees and expenses shall be determined by the Court. In the Fee Application, Plaintiffs and Class Counsel agree to seek or accept no more than $4,000,000 from Ruby for attorneys' fees and expenses combined, notwithstanding any greater award by the Court. Ruby agrees not to oppose an application for an award of attorneys' fees and expenses combined up to that amount. Plaintiffs and Class Counsel further agree that an award by the Court of the combined total of less than $4,000,000 will have no effect on the settlement or this Agreement. The Court's or an appellate court's failure to approve, in whole or in part, any award of attorneys' fees and expenses to Class Counsel shall not affect the validity or finality of the Settlement, nor shall such non-approval be grounds for rescission of the Settlement Agreement, as such matters are not the subject of any agreement among the Parties other than as

15

150577082.3

set forth above.  In the event the Court declines to approve, in whole or in part, the payment of

attorney fees, litigation costs and expenses to Class Counsel in the amount sought by Class

Counsel, the remaining provisions of this Agreement shall remain in full force and effect.

2.    Ruby shall pay the amount awarded to Class Counsel by the Court up to

$4,000,000.00 into an interest-bearing escrow account titled for the benefit of each of the law

firm's awarded fees and expenses by the Court within 14 days of the entry of the Court's

Judgment and Order of Dismissal of the Action provided for in Section 12, or any separate Order

awarding reasonable attorneys' fees and expenses to Class Counsel, whichever comes later.  It is

specifically agreed that when paid into escrow, title in these funds shall pass to Class Counsel,

and Ruby's interest in the funds will be purely contingent on the Effective Date failing to come

to pass.

3.    The awarded fees and expenses in escrow, together with any accrued interest,

shall be released to Class Counsel five (5) calendar days of the Effective Date of this Settlement,

or the following business day should that day fall on a weekend or holiday.

4.    Ruby will pay (upon request, by wire transfer) the fees and expenses provided for

in Sections 6.1 and 6.2 to the escrow account of Stoll Stoll Berne Lokting & Shlachter, P.C.,

which shall be responsible for distributing it amongst Class Counsel as agreed upon by Class

Counsel.

5.    Class Counsel will request permission from the Court to compensate the Class

Representatives and Maiden participation fees of $1,000.00 each ($3,000.00 total) to partially

compensate them for the services they have undertaken for the benefit of the Class during these

lawsuits.  Any such amounts awarded by the Court shall be paid exclusively out of counsel fees

awarded by the Court, for which Ruby shall have no liability.

16

150577082.3

Exhibit 1
Joint Declaration in Support of Motion for Final Approval and Award of Attorney Fees and Costs and Service Awards to Plaintiffs
Page 16 of 33

7.      DISMISSAL OF THE STATE ACTION

      1.      Maiden will participate in, be bound by, and will not object to or opt out of the settlement set forth in this Agreement, and upon the Settlement Effective Date Class Counsel shall take all necessary steps to cause the dismissal of the State Action, with prejudice, and without costs to any party.

      2.      Pending the Effective Date, Class Counsel and counsel for Ruby will jointly request continuation or reinstatement of the Stay presently entered in the State action, should that become necessary to preserve the status quo while effecting this Settlement.

8.      PRELIMINARY SETTLEMENT APPROVAL ORDER

      Promptly after execution of this Agreement, Class Counsel shall submit this Agreement to the Court and shall apply for entry of a Preliminary Settlement Approval Order, which among other things, shall:

      (a)      conditionally certify the Settlement Class as defined in Section 3.1, for the purpose of effecting the Settlement only;

      (b)      preliminarily approve the settlement set forth in this Agreement;

      (c)      designate The McKenzie Class Representatives as the representatives of the Settlement Class;

      (d)      designate Class Counsel as counsel for the Settlement Class;

      (e)      designate the Administrator and instruct the Administrator to perform the necessary functions in accordance with the Agreement, the Preliminary Approval Order, and the Final Approval Order;

      (f)      preliminarily approve the Settlement set forth in this Agreement;

17

(g)      approve the Notice of Class Action Settlement (the "Notice") and order that it be disseminated as provided for in Section 9.1;

(h)      find that the distribution of the Notice as provided for in Section 9, constitutes the best notice practicable under the circumstances and complies fully with the requirements of federal law and any other applicable law;

(i)      provide that Settlement Class Members shall have the right to "opt out" of this Agreement as provided for in Section 9.7, but that this opt out right must be exercised individually and in writing, and not on a representative, derivative, class-wide, or subclass-wide basis, and that Settlement Class Members who opt out shall not have standing to intervene in this proceeding or object to the proposed Settlement;

(j)      provide that any Settlement Class Member who does not opt out may, as provided for in Section 9.8, object to the proposed settlement, the proposed Judgment, and/or any application for attorneys' fees;

(k)      schedule the Final Settlement Hearing to be held by the Court to consider and determine (i) whether the Settlement set forth in this Agreement should be approved finally as fair, reasonable and adequate, (ii) whether the proposed Judgment approving the Settlement should be entered; and (iii) whether the application of Class Counsel for attorneys' fees and reimbursement of expenses should be approved;

(l)      provide that the Final Settlement Hearing may from time to time, without further notice to the Settlement Class, be continued or adjourned by order of the Court; and

(m)      provide that, pending final determination of whether the Settlement set forth in this Agreement is approved, no member of the Settlement Class, whether directly, representatively, derivatively, or in any other capacity, shall commence, prosecute, or participate

18

150577082.3

in (actively or inactively) any action or proceeding in any court or tribunal asserting any of the Released Claims against any of the Released Parties.

9.     NOTICE OF SETTLEMENT, EXCLUSIONS AND OBJECTIONS

1.     As soon as possible, and not later than 30 days after the Court's entry of the Preliminary Approval Order, the Administrator shall send by email, where email contact information is available and deliverable, the Notice of Settlement to every member of the Settlement Class.  The emailed notice will be formatted in a manner so that it is viewable in most email platforms.  The settlement administrator will also mail the class notice to all  known Settlement Class members identified on Ruby's client list, other than those with an available and deliverable email address.  The Notice of Settlement shall be substantially in the form of Exhibit A to this Agreement, subject to approval by the Court.  The Administrator will forward all Notices of Settlement that are returned by the U.S. Postal Service with a forwarding address.

2.     The Administrator shall establish a Settlement Website that enables Settlement Class Members to read the Notice of Settlement; relevant pleadings such as the operative complaints, papers in support of preliminary and final approval of the Settlement, and Class Counsel's Fee Application; relevant orders of the Court; and any other information the Parties jointly agree to post concerning the nature of the case and the status of the Settlement, as well as review, complete, and submit a Request for Exclusion online.  The Settlement Website will be on the pre-existing informational website located at Rubyreceptionistslitigation.com.  The Settlement Website shall be operational from no later than ten business days after the date of entry of the Preliminary Settlement Approval Order.

3.     The Parties agree that the Notice of Settlement, and Settlement Website will provide information sufficient to inform Settlement Class Members of: (1) the essential terms of

150577082.3

this Settlement Agreement; (2) appropriate means for obtaining additional information regarding the Settlement Agreement and the State and Federal Actions; and (3) appropriate information about the procedure for objecting to or excluding themselves from the Settlement, if they should wish to do so.  The Notice of Settlement will also include: (1) contact information for class counsel to answer questions; (2) the address for a website, maintained by the claims administrator, that has links to the notice, motions for approval and for attorneys' fees and any other important documents in the case; (3) instructions on how to access the case docket via PACER or in person at any of the court's locations; and (4) a statement that the date of the final approval hearing and clearly state that the date may change without further notice to the class. Class members should be advised to check the settlement website or the Court's PACER site to confirm that the date has not been changed.  A draft of the Notice of Settlement is attached as Exhibit A.  The Parties also agree that the dissemination of the Notice of Settlement in the manner specified in this section satisfies the notice requirements of due process and Rule 23 of the Federal Rules of Civil Procedure.

4.      The Administrator shall send appropriate notices to governmental agencies as required by the Class Action Fairness Act.

5.      Within 45 days after the Court's entry of the Preliminary Approval Order, the Administrator will file with the Court a declaration of compliance with this plan of notice.

6.      Within 50 days after entry of the Preliminary Approval Order, Class Counsel shall file the Motion for Final Approval and their Fee Application.  Both shall be posted on the Settlement Website.

7.      Settlement Class Members shall have the right to be excluded from, or "opt out" of, the Settlement Class and this Agreement electronically or by sending a written request for

150577082.3

exclusion to the Administrator.  The written request for exclusion must be postmarked not later than 85 days after the entry of the Preliminary Approval Order (if by mail) or received by that date (in the case of electronically submitted exclusions) and must set forth:  1) the Class Member's name (individual or entity's name); 2) if an entity, then include the representative's full name and title; 3) mailing address; and 4) a statement that the class member wants to be excluded from the settlement in *McKenzie v. Ruby Receptionists*, Case No. 3:18-cv-01921.

8.      Any Settlement Class Member who does not opt out may object to the proposed settlement or fee request by filing with the Court and mailing to Class Counsel and to counsel for Ruby by first-class mail postmarked not later than 85 days after entry of the Preliminary Approval Order, a written statement of objection which must set forth:  (a) an identification of the action, *e.g.*, *McKenzie v. Ruby*; (b) the Settlement Class Member's full name or entity name, address; and (c) the specific reasons for the objection, and any evidence or legal authority the Settlement Class Member believes supports the objection.  Any Settlement Class Member who has filed and served a written statement of objection may also enter an appearance at the Final Settlement Hearing either personally or through counsel of their choice, with the expense of such counsel to be borne by the objecting Settlement Class Member.  Settlement Class Members and their counsel who intend to appear at the Final Settlement Hearing must file with the Court a written notice of appearance, which must be postmarked not later than 85 days after entry of the Preliminary Approval Order.

9.      Within 95 days of the entry of the Preliminary Approval Order, the Administrator must provide to counsel a list of all exclusions, any objections received by the Administrator, and a declaration summarizing those exclusions and objections, and Ruby's counsel must file those materials with the Court within ten days after receipt.

21

150577082.3

10.    Within 105 days after entry of the Preliminary Approval Order, Class Counsel shall file their reply, if any, in support of their Motion for Final Approval and Fee Application.

11.    Within 21 days of the final distribution of vouchers as described in Section 4.2, the Parties shall file a Post-Distribution Accounting and cause it to be posted on the Settlement Website.  The Post-Distribution Accounting shall include the total number of class members, the total number of class members to whom notice was sent and not returned as undeliverable, the number and percentage of opt-outs, the number and percentage of objections, the administrative costs, the attorneys' fees and costs, the attorneys' fees in terms of percentage of the settlement fund, and the multiplier, if any, the average and median recovery per claimant, the number of class members availing themselves of the vouchers and the aggregate value redeemed by the class members and/or by any assignees or transferees of the class members' interests, and the benefit of the relief discussed in Section 3 to the class.

10.    <u>ADMINISTRATION OF SETTLEMENT</u>

Ruby will bear the expense of the Administration of the Settlement, including the provision of Notice, receipt of any opt-outs, and distribution of settlement benefits made available under the Settlement, in an amount no greater than $100,000.  Any expense of administration above $100,000 shall be borne by the class or by Class Counsel.  Ruby shall not be responsible for any expense (including attorneys' fees)  that may be incurred by, on behalf of, or at least at the direction of the Settlement Class Representatives, the Settlement Class Members or Class Counsel in (a) responding to inquiries about the Settlement Agreement, the Settlement, or the Federal or State Actions; (b) defending the Settlement Agreement or the Settlement against any challenge to it; or (c) defending against any challenge to any order or judgment entered pursuant to the Settlement Agreement, unless otherwise specifically agreed.

22

150577082.3

11.     CANCELLATION OR TERMINATION

1.     In the event that this Agreement is not approved by the Court substantially in the form submitted (or in a modified form mutually acceptable to the parties), or this Agreement is terminated or fails to become effective or Final in accordance with its terms, the Settlement Class Plaintiffs, the Settlement Class and Ruby shall be restored to their respective positions in the Action as of the date hereof.  In such event, the terms and provisions of this Agreement shall have no further force and effect and shall not be used in this Action or in any other proceeding or for any purpose, and the parties will jointly make an application requesting that any Judgment entered by the Court in accordance with the terms of the Agreement shall be treated as vacated, nunc pro tunc, and any funds paid into escrow to benefit Class Counsel for court awarded attorneys' fees and expenses, along with any accrued interest thereon, shall revert back to Ruby.

2.     By entering into this Agreement, Ruby is not consenting or agreeing to certification of the Settlement Class for any purpose other than to effectuate the settlement of the Action.  The parties agree that if this Agreement is not approved by the Court substantially in the form submitted (or in a modified form mutually acceptable to the parties), or if this Agreement is terminated or fails to become effective or Final in accordance with its terms, the Action shall proceed as if no party had ever agreed to such settlement, without prejudice to the right of any party to take any and all action of any kind in the Action.

12.     JUDGMENT AND ORDER OF DISMISSAL

The undersigned counsel shall submit to the Court a proposed Judgment and Order of Dismissal, substantially in the form annexed hereto as Exhibit B, which shall, among other things:

23

150577082.3

(a)     find that the prerequisites set forth in federal law for the maintenance of the Action as a class action for settlement purposes have been met, and that the preliminary order certifying the Action as a class action shall become final;

(b)     find that the Notice (and, if required, the Summary Notice), complies with the requirements of Federal Rule of Civil Procedure 23;

(c)     approve the settlement as set forth in this Agreement as fair, reasonable and adequate in all respects pursuant to federal law and all other applicable laws, and order the parties to consummate the settlement in accordance with the terms of this Agreement;

(d)     decree that neither the Judgment nor this Agreement shall constitute an admission by Ruby of any liability or wrongdoing whatsoever;

(e)     dismiss this Action with prejudice and without costs, except as provided in Sections 6 and 10;

(f)     decree that all Releasors shall, as of the entry of the Judgment, conclusively be deemed to have released and forever discharged the Released Parties from all Released Claims, and forever enjoin and bar all Releasors, whether acting directly, representatively, derivatively or in any other capacity, from commencing, prosecuting, or participating in (actively or inactively) any action or proceeding in any court or tribunal asserting any of the Released Claims against any of the Released Parties;

(g)     award reasonable attorneys' fees and expenses to Class Counsel, as determined by the Court, in accordance with Section 6; and

(h)     without affecting the finality of the Judgment, reserve exclusive and continuing jurisdiction over this Action, the Settlement Class Representatives, the Settlement Class Members, Ruby, and their respective counsel for the purpose of, among other things,

24

supervising the implementation, enforcement, construction and interpretation of this Agreement and the Judgment.

13.    CONDITIONS OF SETTLEMENT

The effectiveness of this Settlement shall be conditioned on the occurrence of all of the following events:

(a)    all persons named at the end of this Agreement shall have executed it along with their respective counsel;

(b)    the Court shall have entered the Judgment, substantially in the form annexed hereto as Exhibit B (or in a modified form mutually acceptable to the parties), and shall not have granted a fee application that would cause the total award for attorneys' fees and costs to exceed $4,000,000.00; and

(c)    the Judgment shall have become "Final" as defined in Section 2.5 of this Agreement.

14.    AUTHORITY TO EXECUTE

Each counsel or other person executing this Agreement on behalf of any party hereto warrants that such person has the authority to do so.

15.    GOVERNING LAW

This Agreement shall be subject to, governed by, interpreted, and enforced in accordance with the internal laws (including with regard to conflicts of law provisions) of the State of Oregon.

16.    EXECUTION OF COUNTERPARTS

This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original but all of which together shall constitute one and the same instrument.

25

150577082.3

Exhibit 1
Joint Declaration in Support of Motion for Final Approval and Award of Attorney Fees and Costs and Service Awards to Plaintiffs
Page 25 of 33

Executed counterparts shall be deemed valid if delivered by mail, courier, electronically, or by facsimile.

17.     BINDING EFFECT OF SETTLEMENT

This Agreement shall be binding upon and inure to the benefit of the settling parties (including all Settlement Class Members who do not opt out of the settlement described in this Agreement), their respective agents, attorneys, insurers, employees, representatives, officers, directors, partners, divisions, subsidiaries, affiliates, associates, assigns, heirs, successors in interest and shareholders and any trustee or other officer appointed in the event of a bankruptcy.

18.     ENTIRE AGREEMENT

This Agreement and any exhibits attached to it constitute the entire agreement between the parties hereto and supersede any prior agreements or understandings whether oral, written, express or implied between the parties with respect to the settlement.  This Agreement shall not be amended, altered, or modified except by an instrument in writing signed by all parties, or their successors in interest.  The parties recognize that the text was subject to negotiation and drafted by neither party.

19.     NO ADMISSIONS

1.      Entering into or carrying out this Agreement, and any negotiations or proceedings related thereto, shall not be construed or deemed to be evidence of an admission or concession by any party with respect to the merits of its position; and specifically shall not give rise to any presumption or inference of an admission or concession by Ruby of any fault, wrongdoing or liability whatsoever, which Ruby expressly denies.  Entering into or carrying out this Agreement, and the negotiations or other proceedings related thereto, shall not be offered or received in evidence in this or any civil, criminal, administrative or other action or proceeding, before any

26

150577082.3

tribunal, for any purpose whatsoever other than to effectuate the provisions of this Agreement, to defend against the assertion of the Released Claims, or as otherwise required by law.

2.      Except as otherwise expressly provided herein, neither this Agreement, nor any document referred to herein, nor any action taken to carry out this Agreement, shall be construed as giving rise to any waiver, or presumption or inference of admission or concession, by Ruby, the Settlement Class Representatives or the Settlement Class with respect to any rights or privileges any party may have under or with respect to any contracts or agreements between Ruby and its customers, including but not limited to any rights or privileges with respect to any provision concerning dispute resolution.

20.    REPRESENTATIONS AS TO FINANCIAL CONDITIONS OF RUBY

It is expressly agreed and understood that Ruby has made certain representations about its financial condition to the Mediator in connection with the mediation of this case, and has produced for review certain financial information, all of which Class Counsel have relied upon as material factors for entering into this Settlement Agreement.  Ruby represents and warrants that those representations and information were, in all material respects accurate, and will provide to the Court a declaration affirming the accuracy of the financial documentation provided during the Parties' mediation with Hunter R. Hughes, III, Esq., as part of its submissions in support of this agreement.

21.    MISCELLANEOUS PROVISIONS

1.      The parties acknowledge that violation of this Agreement or any of the releases will cause immediate irreparable injury for which no remedy at law is adequate.  If either party fails to perform its obligations hereunder, the other party shall be entitled to specific

150577082.3

performance, including through mandatory preliminary and final injunctive relief, in addition to such other remedies as are provided herein or as may otherwise be available by law.

2.      Except as otherwise provided herein, all notices, requests, demands and other communications required or permitted to be given pursuant to this Agreement shall be in writing and shall be delivered personally, by facsimile, by e-mail, or by overnight mail, to the undersigned counsel for the parties at their respective addresses.

3.      The waiver by one party of any breach of this Agreement by another party shall not be deemed a waiver of any other prior or subsequent breach of this Agreement.

4.      This Agreement shall be construed and interpreted to effectuate the intent of the parties, which is to provide, through this Agreement, for a complete resolution of the Released Claims.

5.      The section titles and captions contained in this Agreement are inserted only as a matter of convenience and for reference, and shall in no way be construed to define, limit, or extend the scope of this Agreement or the intent of any of its provisions.  This Agreement shall be construed without regard to its drafter, and shall be construed as though the parties participated equally in the drafting of this Agreement.

6.      The parties and their counsel shall use their best efforts and cooperate in obtaining final court approval and implementation of this Agreement.

7.      If the date for performance of any action required by or under this Agreement to be performed on a particular day or within a specified period of time falls on a Saturday, Sunday or Court holiday, that act may be performed on the next business day with the same effect as if it had been performed on the day or within the time period specified by or under this Agreement.

150577082.3

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

RUBY RECEPTIONISTS, INC., and its Counsel:

_____
Kate Winkler, CEO
RUBY RECEPTIONISTS, INC.
805 SW Broadway #900
Portland, OR  97205

_____
Renee E. Rothauge
PERKINS COIE LLP
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Telephone:  (503) 727-2000
Facsimile:  (503) 727-2222

PLAINTIFFS AND THE CLASS, by Settlement
Class Representatives and Class Counsel:

_____
Alistair McKenzie
MCKENZIE LAW FIRM, P.A.
905 E Hatton St
Pensacola, FL  32503-3931
Telephone:  (800)343-3067
Facsimile:  (850) 202-2012

_____
Jamie Oliver, Esq.
OLIVER LAW OFFICE, INC

150577082.3

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

                                    RUBY RECEPTIONISTS, INC., and its Counsel:


                                    _____
                                    Kate Winkler, CEO
                                    RUBY RECEPTIONISTS, INC.
                                    805 SW Broadway #900
                                    Portland, OR  97205


                                    _____
                                    Renee E. Rothauge
                                    PERKINS COIE LLP
                                    1120 N.W. Couch Street, 10th Floor
                                    Portland, OR  97209-4128
                                    Telephone:  (503) 727-2000
                                    Facsimile:  (503) 727-2222

                                    PLAINTIFFS AND THE CLASS, by Settlement
                                    Class Representatives and Class Counsel:


                                    _____
                                    Alistair McKenzie
                                    MCKENZIE LAW FIRM, P.A.
                                    905 E Hatton St
                                    Pensacola, FL  32503-3931
                                    Telephone:  (800)343-3067
                                    Facsimile:  (850) 202-2012



                                    _____
                                    Jamie Oliver, Esq.
                                    OLIVER LAW OFFICE, INC


                                         29

150577082.3

Exhibit 1
Joint Declaration in Support of Motion for Final Approval and Award of Attorney Fees and Costs and Service Awards to Plaintiffs
Page 30 of 33

7240 Muirfield Drive, Suite 120
Dublin, OH 43017
Telephone: (614) 220-9100

Kathy Fallon Maiden
MAIDEN INSURANCE, LLC
406 N Mildred St.
Ranson, WV 25438
Telephone: (304) 724-9099

Keith S. Dubanevich, Esq.
STOLL STOLL BERNE LOKTING &
SHLACHTER P.C.
209 SW Oak Street, Suite 500
Portland, OR 97204
Telephone: (503) 227-1600
Facsimile: (503) 227-6840

Laurence King, Esq.
KAPLAN FOX & KILSHEIMER LLP
350 Sansome Street, Suite 400     1999 Harrison St. Ste. 1560
San Francisco, CA 94104     the Oakland, CA 94612      live
Telephone: (415) 772-4700
Facsimile: (415) 772-4709

Robert I. Lax, Esq.
LAX LLP
380 Lexington Avenue, 31st Floor
New York, NY 10168
Telephone: (212) 818-9150
Facsimile: (212) 208-4309

30

150577082.3

7240 Muirfield Drive, Suite 120
Dublin, OH 43017
Telephone: (614) 220-9100

Kathy Fallon Maiden
MAIDEN INSURANCE, LLC
406 N Mildred St.
Ranson, WV 25438
Telephone: (304) 724-9099

Keith S. Dubanevich, Esq.
STOLL STOLL BERNE LOKTING &
SHLACHTER P.C.
209 SW Oak Street, Suite 500
Portland, OR 97204
Telephone: (503) 227-1600
Facsimile: (503) 227-6840

Laurence King, Esq.
KAPLAN FOX & KILSHEIMER LLP
350 Sansome Street, Suite 400
San Francisco, CA 94104
Telephone: (415) 772-4700
Facsimile: (415) 772-4709

Robert I. Lax, Esq.
LAX LLP
380 Lexington Avenue, 31st Floor
New York, NY 10168
Telephone: (212) 818-9150
Facsimile: (212) 208-4309

30

_____
Jon M. Herskowitz, Esq.
BARON & HERSKOWITZ
9100 S Dadeland Blvd #1704
Miami, FL 33156
Telephone: (305) 670-0101
Fax: (305) 670-2393

Gregory Brod- P.P. /s/ Robert Lax
_____
Gregory J. Brod, Esq.
BROD LAW FIRM, PC
96 Jessie Street
San Francisco, CA  94105
Telephone: (415) 397-1130

31

150577082.3